[Crim. No. 3555.   Second Dist., Div. Three.   Apr. 10, 1942.]

THE PEOPLE, Respondent, v. DAVE STEINBERG, Appellant.

Wyman G. Reynolds for Appellant.

Earl Warren, Attorney General, and Alberta Belford, Deputy Attorney General, for Respondent.

SHINN, J.—Defendant appeals from a judgment of conviction on two counts of receiving stolen property after a trial before the court pursuant to an indictment. He bases his appeal upon the alleged insufficiency of the evidence. Upon the trial he admitted having received the goods described in the first count of the indictment but denied any criminal intent (Pen. Code, sec. 496) and denied having received the goods described in the second count. The case on appeal turns upon the credibility of witnesses, as it did in the trial court, although, of course, under entirely different rules.

On the night of March 15, 1941, four men entered the storage room of a dealer in lubricating oils and greases and stole a large quantity of oil in quart cans and drums and some cans of grease. The oil was contained in 284 cartons, comprising 6816 quart cans and was of the value of $957.43. All of the men had been drinking heavily on the day of the burglary. Three of them, Boroff, Kirtley, and Wilkinson, were arrested and entered pleas of guilty to burglary and applied for and received probation. While their applications were pending they made statements to the probation officer, and after being granted probation they testified before the grand jury and at the preliminary examination of a fourth man, Roy Long, who also was charged with the

burglaries. The three testified against defendant Steinberg and the account they gave of his receipt of the property was substantially as follows: Boroff, who was employed by a sign truck display company and who had known defendant for at least several months, talked with him a day or two before the burglary about disposing of oil and grease, and in reply to a question by the prosecutor as to what defendant said on that subject, he answered, "Well, they asked him if he could use any of it if we got some and he said 'Yes.'" No mention was made in the conversation of the type of oil, the brand or the quantity. About midnight Saturday, March 15, the first load was taken from the storeroom and was immediately delivered by automobile and a truck taken from the oil company's garage to defendant's service station on North Spring Street. The quantity so delivered was of the value of $426.60. When the men reached the service station with the oil and grease defendant was at his home. He came to the service station upon a telephone call from an employee at the station, arriving before the truck was unloaded. The oil and grease were unloaded into a shed on the premises and defendant at that time gave Boroff $50 in cash and said he could use some more oil and grease at his service station on Brooklyn Avenue. The thieves then returned to the storage room of the oil company, stole another load of oil and grease and delivered that in another truck of the oil company to defendant's Brooklyn Avenue station. Defendant was there when it was delivered and stored in a shed on the premises. The cans of oil and grease and some drums of oil delivered at this address made a pile some four feet by five feet by nine feet. The $50 received from defendant Saturday night was divided equally among the four burglars. The following day defendant paid Boroff $100 in cash, which likewise was divided among three or perhaps the four men. On Monday, after an argument over the price of the oil and grease, defendant finally agreed to pay $400 for the two lots delivered and gave Boroff three checks for $50 each, postdated, which Boroff cashed at a cafe. This money was likewise divided. Defendant stopped payment on these checks when the bank opened on Tuesday morning.

This testimony, if it was believed by the trial judge, was sufficient to prove all of the elements of the crime of receiving stolen property. Without explanation of the circum-

stances pointing toward defendant's guilt there would have been no basis for a theory of innocence. The evidence of defendant's guilt under the second count, arising out of the second delivery of oil and grease, which was made to the Brooklyn Avenue station, insofar as it rested upon the veracity of the witnesses, was equally as strong as that which related to his guilt upon the first count arising out of the delivery to the Spring Street station. The fact that no stolen property was found at the Brooklyn Avenue address when the police visited the premises on Wednesday following the burglaries did not render incredible the testimony as to its delivery there.

Defendant offered the following explanation: that he had had no conversation with any of the men about purchasing oil or grease; that he was not called to the service station until about six o'clock Sunday morning, at which time the oil and grease had all been stored in a shed on the premises. The burglars asked him for money, which he refused to give them, saying that he had none; that he asked them how they came to have the property and Boroff told him that he was working for an oil company which did not have sufficient money to pay his wages and that he had been paid in merchandise. Boroff then got some oil and gas for his car and signed a ticket showing the receipt of the same. On the ticket defendant wrote, "Bill Boroff, 05-V812 Packard, 10 (gallons) Sup (Super Shell) 1.50, 7 quarts G S (Golden Shell) 1.75, (total) 3.25. Recd from Bill 109 cases Hyves, 7 cans Hyves, 2 tires." Below this Boroff signed his name. Defendant testified that the circumstances looked "funny" to him; that he called police headquarters Sunday morning and inquired whether an oil burglary had been committed; that a woman who answered the phone said she would connect him with the burglary detail, whereupon a man answered, told him that he had heard of no oil burglary and that the officers who worked in the North Spring Street district where defendant's service station was located were not on duty Sunday and could not be reached until Monday morning; that on Monday morning he again called the police department and in response to the call two officers came to his North Spring Street station. Defendant in the meantime had had the oil stored in a shed, which he locked. When the officers came they were shown the stolen goods and defendant delivered to them the key

to the shed. Defendant gave the officers Boroff's name and the license number of his car. He denied seeing the men on Sunday, on which day they had testified he paid them $100, but admitted having given them the three postdated checks for $50 each on Monday. Boroff was arrested on Tuesday and Kirtley and Wilkinson shortly thereafter. On Tuesday the officers went to defendant's Brooklyn Avenue service station but found none of the stolen goods there. No part of the stolen property other than that delivered to defendant's Spring Street service station was ever recovered. Defendant's account of his call to the police on Monday and his cooperation with them afterwards was fully corroborated. There was no corroboration of his testimony as to the telephone call on Sunday.

Defendant was arrested Tuesday night or Wednesday morning. He was subsequently released without a charge having been filed against him. After Boroff, Wilkinson and Kirtley were sentenced and placed on probation they testified before the grand jury, which returned an indictment against defendant. Boroff testified to having seen defendant in jail following the latter's first arrest and that on that occasion defendant had said to him, "No use of all of us taking the rap. You boys go ahead and say you stored it in my place. I will get a lawyer and see what we can do." Defendant denied having made the statement.

At the time Boroff, Kirtley and Wilkinson were before the court for sentence the court referred the matter of the implication of the fourth man and defendant Steinberg to the grand jury and questioned the other three as follows: "There is no reason why the three of you would not be willing to appear before the Grand Jury and tell the same story that you told the probation officer?" to which the three answered that there was no such reason. Boroff was then sentenced, execution of the sentence was suspended and he was placed on probation. Proceedings against Wilkinson and Kirtley for imposition of sentence were suspended and they were placed on probation.

Appellant has called to our attention many contradictions and discrepancies in the testimony of said three witnesses, consisting of conflicting statements made in their reports to the probation officer, in testimony given at the time of their preliminary examinations and at the preliminary examination of the fourth man, Roy Long, and other statements incon-

sistent with their testimony upon the trial of defendant. Each of the three men made two different reports to the probation officer, stating in the first reports that the burglary had been committed in the daytime on Sunday morning. In the first reports it was stated that the oil and grease had been taken to a place on North Spring Street and stored in a shed, but defendant or his place of business was not named. In the second reports they implicated defendant as the receiver of the stolen property. Other contradictions consisted of statements and testimony involving the fourth man, Roy Long, and contradictory statements and testimony to the effect that they could not recall whether he participated in the burglaries.

It is earnestly insisted by appellant that the three witnesses who testified against him were so thoroughly impeached that their testimony was shown to be wholly unworthy of belief. It is further argued that the conduct of appellant in reporting the receipt of the property to the authorities and thereafter cooperating with them for the arrest of the offenders conclusively proved that he did not receive the property for his own gain or to prevent the owner thereof from again possessing the same, these being elements of the crime of receiving stolen property as the offense is defined in section 496 of the Penal Code. We do not consider it necessary to review at length the arguments made in support of this contention. It may be conceded that the question whether appellant was innocent or guilty was a difficult one for the trial judge to decide. If the testimony of the defendant was to be believed, the stolen property was brought to his place of business without previous arrangement or knowledge upon his part and he proceeded from the time of its delivery with the purpose of aiding the police in apprehending the thieves and convicting them of their crime. In furtherance of this purpose, according to his explanation, he issued the three $50 checks in order to prevent the removal of the oil before the burglars could be apprehended. If such had been his motives and if he had received the stolen property with no intention of keeping it, he would have been innocent of the crime charged. He was ably represented by counsel at the trial and this defense was thoroughly presented and, as shown by the record, was given thoughtful consideration by the trial judge. However, it was not unreasonable for the trial judge to believe that the stolen property was not taken to defendant's place

of business without a prior arrangement having been made for its purchase by defendant. The payment of $50 at the time of the receipt of the oil and the further sum of $100 on the following day would have been wholly inconsistent with defendant's protestations of worthy motives and righteous efforts to bring the criminals to justice. The conduct of the defendant in reporting the receipt of the property to the police may well have been the result of an afterthought and of fear on defendant's part that the stolen property might be traced to him. His repentance, if admissions made through fear and for self-protection could be called repentance, would have availed him nothing after he had received the property for personal gain and for the purpose of depriving the true owner thereof. Under the most familiar rules the credibility of the witnesses was for the decision of the trial judge. Defendant, unfortunately for him, where his claimed defense rested almost entirely upon his own credibility, was shown to have suffered two prior convictions of burglary, pursuant to one of which he had been placed on probation and to the other had served a term in the state's prison. We find no ground for holding that the evidence introduced against defendant was without probative force or that it was insufficient in law to establish his guilt under both or either counts of the indictment. The unquestionable contradictions, conflicts, and other weaknesses in the testimony of the three principal witnesses for the People, when considered with the circumstantial evidence relating to defendant's receipt of the stolen property, do not render incredible the testimony which implicated defendant in the criminal acts charged. (*People* v. *Dorland* (1934), 2 Cal. (2d) 235, 243 [40 P. (2d) 474].)

The judgment is affirmed.

Schauer, P. J., and Wood (Parker) J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 8, 1942.