**Gary CAPSHAW, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 86–59.

Supreme Court of Wyoming.

May 28, 1987.

Leonard D. Munker, State Public Defender, and Julie D. Naylor, Appellate Counsel, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Terry L. Armitage, Legal Intern, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Justice.

Does § 6–3–403(a)(i), W.S.1977, Cum. Supp.1985, which proscribes buying, receiving, concealing or disposing of property with the knowledge, belief or reasonable cause to believe that it was obtained in violation of law, encompass an element of specific intent? This is the essential issue to be resolved in this appeal. Gary Capshaw also contends that there was insufficient evidence to sustain his conviction. The district court ruled that specific intent was not an element of this crime and refused to give proffered instructions with respect to specific intent. It also denied Capshaw's motion for a judgment of acquittal. We agree with these rulings by the trial court and affirm Capshaw's conviction.

In the brief filed in his behalf, Capshaw sets forth this statement of the issues:

"I. Whether the failure of the judge to instruct the jury that the crime charged was a specific intent crime violates due process and requires reversal.

"II. Whether there exists insufficient evidence in the record to sustain appellant's conviction on appeal."

In its responsive brief, the State of Wyoming offers this statement of the issues:

"I. Was the failure of the judge to instruct the jury that the crime charged was a specific intent crime grounds for reversal?

"II. Was the evidence presented to the jury sufficient to sustain the conviction of receiving, concealing or disposing of stolen property?"

On the night encompassing the late evening hours of July 24, 1985, and the early morning hours of July 25, 1985, a set of B.J. Hughes brand rod tongs and a set of B.J. Hughes brand tubing tongs were stolen from an oil rig site in the Salt Creek Oil Field in Natrona County, Wyoming. These were the property of Dunbar Well Service and must have been taken sometime between 5:00 P.M. on July 24, 1985, and 6:30 A.M. on July 25, 1985. They were identifiable by serial numbers which were maintained in the records of Dunbar Well Service. They also were distinctive because, while originally painted orange, they had been painted red, and worn areas permitted the orange paint to show through.

About a week prior to the theft, Ernie Robb, Jr. had gone to a body shop owned by Capshaw's father to look for a set of pulling tongs and a sand pump. He encountered Capshaw there, and Capshaw advised him that he had a set of Hellman Kelly tubing tongs that he wanted to sell. Ernie Robb, Jr. said that he would inform his father. At approximately 6:00 A.M. on July 25, 1985, Capshaw telephoned Robb and said that he had the tongs and requested that they meet. Robb did meet Capshaw at about 6:30 in the morning at Riverbend Road in Mills, Wyoming. The meeting was held around the side of a building at a car lot on Riverbend Road. At that meeting, Capshaw was accompanied by an unidentified 6'1", light complected, 190–pound average looking individual who was driving a white pickup. A set of rod tongs and tubing tongs were in the back of the pickup covered by a tarp. At that time, Capshaw offered to sell both sets of tongs to Robb for a total price of $8,000, $5,000 for the tubing tongs and $3,000 for the rod tongs. Robb again advised that he would inform his father.

The following day Robb went to Capshaw's father's shop, and after he had talked with the same individual who had been with Capshaw on the previous morning, the rod tongs and the tubing tongs which had been stolen from Dunbar Well Service were unloaded from the same white pickup and placed on Robb's truck so that he could deliver them to the oil rig of Ernie Robb, Sr. Robb's father then suggested to

him that these tongs might be stolen, and Robb took them to Edgerton where the chief of police identified the tongs by their serial numbers as having been stolen from Dunbar Well Service. Robb then returned the tongs to Dunbar Well Service.

After he had received the tongs, Robb was called on the telephone twice by Capshaw. In those telephone calls, Capshaw requested a $2,000 advance on the payment for the tongs. Once he had been advised that the tongs had been returned to Dunbar Well Service, Capshaw made no further contact with Robb.

At the trial, the vice president for Dunbar Well Service testified as to the market value of the tubing tongs and the rod tongs. He placed the value of the former at between $9,500 and $10,000 and the value of the latter at between $6,000 and $6,500.

The statute which Capshaw was convicted of violating provides:

"(a) A person who buys, receives, conceals or disposes of property which he knows, believes or has reasonable cause to believe was obtained in violation of law is guilty of:

"(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,-000.00), or both, if the value of the property is five hundred dollars ($500.00) or more; * * *." Section 6–3–403(a)(i), W.S.1977, Cum.Supp.1985.

Even though the statutory definition does not encompass an element of specific intent, Capshaw urges the proposition that the element of specific intent should be implied in the statute and that the district court erred in refusing to give to the jury his proferred instructions with respect to specific intent.

In *State v. Callaway*, 72 Wyo. 509, 267 P.2d 970 (1954), and in *Russell v. State*, Wyo., 583 P.2d 690 (1978), this court said

that all of the essential elements of this crime are included in the statute and went on to describe those elements.

"But our statute is not couched merely in generic terms, it fully, directly, expressly and without any uncertainty or ambiguity, sets forth all of the elements which this court has said are necessary to constitute the offense intended to be punished." *State v. Callaway*, supra, 267 P.2d at 972.[1]

" * * * The material elements, each of which were required to be proved beyond a reasonable doubt to support conviction, were and are: (1) the receipt (2) of a thing of value which has been stolen and (3) knowing it to have been stolen." *Russell v. State*, supra, 583 P.2d at 693.[2]

In neither instance did the court suggest that specific intent was one of the elements of this crime. Although the statute has since been amended, there does not appear to be any substantial difference with respect to the essential elements of the crime.

The absence of specific intent as an element of this crime as set forth in *Russell v. State*, supra, is consistent with the distinction between specific intent and general intent which we have recognized.

" * * * When the statute sets out the offense with only a description of the particular unlawful act, without reference to intent to do a further act or achieve a future consequence, the trial judge asks the jury whether the defendant intended to do the outlawed act. Such intention is general intent. When the statutory definition of the crime refers to an intent to do some further act or attain some additional consequence, the offense is considered to be a specific intent crime and then that question must be asked of the jury." *Dorador v. State*, Wyo., 573 P.2d 839, 843 (1978).

1. The statute at that time provided:
"Whoever buys, receives, conceals * * * anything of value, which has been stolen, * * * knowing the same to have been stolen, * * *." Section 9–317, W.C.S.1945.

2. The form of the statute at that time provided:

"Whoever buys, receives, conceals or aids in the concealment of anything of value, which has been stolen, * * * knowing the same to have been stolen, * * *." Section 6–135, W.S. 1957, Cum.Supp.1975.

California also recognizes this distinction between general intent and specific intent. See e.g., *People v. Hood*, 1 Cal.3d 444, 82 Cal.Rptr. 618, 462 P.2d 370 (1969).

The importance of the statutory definition of the crime with respect to whether specific intent is an element has been addressed by the Supreme Court of Colorado. In *Armijo v. People*, 157 Colo. 217, 402 P.2d 79 (1965), that court said:

> " * * * A given crime may consist of an act combined with a *general* intent or, on the other hand, it may consist of an act combined with a *specific* intent to commit the act, depending entirely upon the particular statute which defines the offense under consideration. Where the statute defining the crime includes a specific intent as an ingredient of its criminality, such specific intent is essential and must be established with the same certainty as any other material element of the crime." *Armijo v. People*, supra, 402 P.2d at 80.

The Supreme Court of Connecticut has stated the proposition in this way:

> " * * * If the statute does not include intent or knowledge as an element of the crime, their proof is not necessary." *State v. Bitting*, 162 Conn. 1, 291 A.2d 240, 242 (1971).

The New Mexico statute defining the offense of receiving stolen property prior to its amendment in 1972 was strikingly similar to the statute in Wyoming. It read:

> "Receiving stolen property consists of buying, procuring, receiving or concealing anything of value, knowing or having reason to believe the same to have been stolen * * *." Section 40A–16–11, N.M.S.A.1953 (Repl.Vol. 6, Supp.1971).

In reviewing a conviction under that statute, the New Mexico court held:

> "Section 40A–16–11, supra, does not contain such words as 'with intent.' Specific intent is not an essential element of the crime defined." *State v. Viscarra*, 84 N.M. 217, 501 P.2d 261, 262 (1972).

Since that decision, the New Mexico legislature has amended the statute to require a showing of intent to receive, retain or dispose of stolen property. Section 30–16–11, N.M.S.A.1978 (Cum.Supp.1985).

In some jurisdictions, the element of specific intent is included in the statutory definition of the crime of receiving stolen property. E.g., Colo.Rev.Stat. § 18–4–410(1) (1987 Replacement); Del. Code Ann. Title 11 § 851 (Cum.Supp.1986); Ill.Ann.Stat. ch. 38 § 16–1 (Smith-Hurd Cum.Supp.1986); Utah Code Ann. § 76–6–408(1) (Cum.Supp. 1986). Other jurisdictions, like Wyoming, do not include any specific intent in the statutory definition of this offense. E.g., Ark.Stat.Ann. § 41–2206(1) (1977 Replacement); Conn.Gen.Stat.Ann. § 53a–119(8) (Jan. 1985 Rev.); Ariz.Rev.Stat.Ann. § 13–1802 (Cum.Supp.1986); Cal. Penal Code, § 496 (West Cum.Supp.1987). See also R. Perkins and R. Boyce, Criminal Law at 403–405 (3rd ed. 1982).

In Arizona, Arkansas and California, the statute has been changed to eliminate the element of specific intent. In each jurisdiction, after the statute had been amended, the conclusion was that the element of specific intent had been eliminated from the essential elements of this crime. It is true that in *State v. Fleming*, 117 Ariz. 122, 571 P.2d 268 (1977), relied upon by Capshaw, the Supreme Court of Arizona held that specific intent was an element of the offense in that state. The statute in effect at that time provided:

> "A person who, for his own gain, or to prevent the owner from again possessing the property, buys, sells, possesses, conceals or receives personal property, knowing or having reason to believe that the property is stolen, is guilty * * *." Section 13–621, Ariz.Rev.Stat.Ann. (Cum. Supp.1977).

Subsequently, the statute was amended and renumbered so that it reads as follows:

> "A. A person commits theft if, * * * such person knowingly:
>
> * * * * * *
>
> "5. Controls property of another knowing or having reason to know that the property was stolen; * * *." Section

13–1802, Ariz.Rev.Stat.Ann. (Cum.Supp. 1986).

The Supreme Court of Arizona then said: " * * * [W]hile the new theft statute, §§ 13–1802, explicitly requires a culpable mental state of intent for the two classifications of theft described in its subsections (1) and (3), such a requirement is absent from the remaining four classifications of theft, including subsection (5) of which defendant was convicted. The elimination of language concerning intent from Arizona's statute prohibiting receipt of stolen property indicates that the Legislature intended to remove that element from the offense. * * * " *State v. Morse*, 127 Ariz. 25, 617 P.2d 1141, 1146 (1980) (Footnote omitted.)

Substantially the same events occurred in California. Cal.Penal Code § 496 (West Cum.Supp.1987), was amended to eliminate the intent to deprive the owner of the property. The effect of that amendment was described by the California Court of Appeals in this way:

" * * * To establish guilt of the offense of receiving stolen property, proof of three elements is required: (1) the property must have been stolen, (2) the accused must have received it in his possession, and (3) he must have known that it was stolen. (*People v. Martin* (1973) 9 Cal.3d 687, 695, 108 Cal.Rptr 809, 511 P.2d 1161.)

"Former section 496 (repealed by Stats. 1951, ch. 97, § 1) as last amended provided, in pertinent part: 'Every person *who for his own gain, or to prevent the owner from again possessing his property,* buys or receives any personal property, knowing the same to have been stolen ... is punishable....' (Emphasis added.) Under this statute, defendant's guilty intent, consisting either of receiving the property for his own gain or to prevent the owner from again possessing the property, was an element of the crime. (*People v. Ribolsi* (1891) 89 Cal. 492, 499, 26 P. 1082; *People v. Steinberg* (1942) 51 Cal.App.2d 221, 226, 124 P.2d 341)." *People v. Osborne*, 77 Cal.App.3d 472, 143 Cal.Rptr. 582, 584 (1978).

In Arkansas, too, the statute describing this offense did at one time require an element of intent to deprive the owner of the property, but the statute was amended to abolish that element of the offense. The following statement then was incorporated in the Commentary to Arkansas Statutes Annotated, § 41–2206:

" * * * This was done because inquiry into the actor's state of mind at the time he receives the property, beyond whether he knew the property to be stolen, is irrelevant and unnecessary. The only justification for knowingly purchasing stolen property is the intent of the purchaser to return the property to the rightful owner." Commentary to Ark. Stats.Ann., § 41–2206 (1977 Replacement).

Only in Alaska and Florida has specific intent been implied as an element of this crime in the absence of the inclusion of that element in the statute. *Hensel v. State,* Alaska, 604 P.2d 222 (1979); *Andrew v. State,* Alaska App., 653 P.2d 1063 (1982); *State v. Lewis,* Fla., 364 So.2d 1223 (1978); *State v. McNeil,* Fla.App., 407 So.2d 1021 (1981); *Bradshaw v. State,* Fla.App., 353 So.2d 188 (1977). These jurisdictions represent a minority position, and we choose to follow the majority rule which requires specific intent as an element of this offense only if it is encompassed in the statutory definition.

■ With respect to Capshaw's contention that the evidence is insufficient to sustain his conviction, we use as a point of departure our emerging standard for evaluating the sufficiency of the evidence in a criminal case. In *Dangel v. State,* Wyo. 724 P.2d 1145, 1148 (1986), we said:

"The standard of review with respect to the sufficiency of evidence when that challenge is raised in a criminal case is: '[T]his court is to examine all the evidence in the light most favorable to the state to determine if there is sufficient evidence to uphold the verdict. *Broom v. State,* Wyo., 695 P.2d 640 (1985).' *Aden v. State,* Wyo., 717 P.2d 326 (1986) at 327."

To the same effect is the rule set forth in *Scadden v. State,* Wyo., 732 P.2d 1036 (1987). In *Broom v. State,* supra, 695 P.2d at 642, we explained the application of the test for sufficient evidence in this way:

" * * * [I]t is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State.

\* \* \* \* \* \*

"It is not our function to weigh the evidence for a determination as to whether or not it is sufficient to establish guilt beyond a reasonable doubt. We have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsibility of the jury to resolve conflicts in the evidence." (Citations omitted.)

See *DeSersa v. State,* Wyo., 729 P.2d 662 (1986).

Pursuant to the provisions of § 6-3-403(a)(i), W.S.1977, Cum.Supp.1985, the State had the burden of proving beyond a reasonable doubt that Capshaw (1) bought, received, concealed or disposed of property; (2) which he knew, believed or had reasonable cause to believe was obtained in violation of law; and (3) the value of the property was $500 or more. Applying the sufficiency of the evidence standards quoted above, we have no hesitancy in sustaining the verdict of guilty returned by the jury.

There is no dispute about the value of the property being greater than $500. Furthermore, three employees of Dunbar Well Service testified that the tubing tongs and rod tongs which were returned by Ernie Robb, Jr., were the ones that had been stolen from Dunbar Well Service. In addition, the tongs were positively identified by serial numbers which verified that they were the same tubing tongs and rod tongs that had been stolen.

The evidence also was sufficient to prove that Capshaw received or concealed the property. About a week before the theft, Capshaw told Robb that he had a set of tubing tongs of a different brand which he wanted to sell. At six o'clock on the morning following the night in which the tubing tongs and rod tongs were stolen, Capshaw telephoned Robb to advise him that he had some rod tongs and tubing tongs to show him. When they met at 6:30 that morning, Capshaw was accompanied by the unidentified man. The tubing tongs and rod tongs were in the back of a white Chevrolet pickup covered with a tarp. Capshaw was not present when the rod tongs and tubing tongs were delivered to Robb the next day, but the same unidentified man who had been with Capshaw the previous day helped load the tongs from the same white pickup into Robb's truck.

■   With respect to the element of the crime which requires the State to prove that Capshaw knew, believed or had reasonable cause to believe that the tongs were stolen or obtained in violation of law, we recall that possession of stolen property alone is not enough to establish guilty knowledge.

" * * * There must be some other evidence of circumstances surrounding possession of stolen property of sufficient weight and credibility from which, when considered with the fact of unexplained possession of recently stolen property, a reasonable juror could find beyond a reasonable doubt that the accused knew the property was stolen at the time it was received or concealed by him." *Tageant v. State,* Wyo., 673 P.2d 651, 654 (1983).

In *Tageant v. State,* supra, 673 P.2d at 655, we set forth examples of surrounding circumstances "which, when coupled with unexplained recent possession of stolen property, have been held corroborative of and sufficient to support a finding of guilty knowledge."

We can apply those examples to this case. The price at which Capshaw offered to sell the two sets of tongs to Robb was $8,000. This amount is considerably lower than the $16,000 value testified to by the vice president of Dunbar Well Service. This was a circumstance the jury was entitled to consider.

Capshaw presented to Robb tubing tongs and rod tongs of a different brand than those he previously had suggested he wanted to sell. This record is silent as to how or when Capshaw obtained possession of the tongs delivered to Robb. That unexplained possession was a factor which the jury was entitled to consider. Although Robb agreed that it was difficult to contact him and he could be reached only early in the morning or late at night, the jury still could consider the early morning telephone call suggesting a meeting at an out-of-the-way location as unusual. The weather was not inclement, but the rod tongs and the tubing tongs were concealed by a tarp in the back of the white Chevrolet pickup truck. The next day Capshaw telephoned Robb to request a partial payment for the tongs, but he made no further contact after Robb returned them to Dunbar Well Service. The matter of dealing with the property well could have been perceived by the jury as unusual.

The length of time between the theft of the tongs and Capshaw's possession of them was quite short, a matter of only a few hours. Furthermore, the jury may have attached significance to the fact that Capshaw never asked for payment for the tongs nor for the return of the tongs after Robb told him they had been returned to Dunbar Well Service. The jury was entitled to consider this other incriminating evidence surrounding the entire incident. See *Russell v. State*, supra.

Even though an examination of all of the evidence discloses some conflicts, when the record is evaluated in accordance with the standards which we have quoted, there is sufficient evidence in this record to sustain Capshaw's conviction. The jury's verdict was not premised upon possession of stolen property only but upon a number of other factors which, considered in context, certainly would have the propensity to persuade a reasonable juror of Capshaw's guilty knowledge, i.e., the knowledge, belief or reasonable cause to believe that the property was obtained in violation of law.

Specific intent is not an element of the crime of receiving stolen property in Wyoming. The district court did not err in refusing to give an instruction that it was. Furthermore, the evidence in this case is more than sufficient to sustain Capshaw's conviction by the jury under the standard of proof beyond a reasonable doubt.

The judgment and sentence is affirmed.