# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 108

### APRIL TERM, A.D. 2014

### August 28, 2014

TERRI ANN PAYSENO,

Appellant
(Defendant),

v.                                                          S-13-0224

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Hot Springs County*
**The Honorable Robert E. Skar, Judge**

*Representing Appellant:*
> Office of the Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Kristen R. Jones, Assistant Attorney General.

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

*\* Chief Justice at time of expedited conference.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Justice.**

[¶1]   Terri Ann Payseno was convicted in Hot Springs County, Wyoming of three offenses involving the theft and subsequent sale of two saddles to a pawn shop.  Ms. Payseno appeals, claiming the district court abused its discretion when it admitted, under W.R.E. 404(b), evidence that she pawned another saddle which allegedly belonged to her sister.

[¶2]   We conclude the evidence was not properly admitted but Ms. Payseno was not prejudiced by the error.  Consequently, we affirm.

## ISSUE

[¶3]   Ms. Payseno presents a single issue on appeal:

> I.      Did the district court abuse its discretion in admitting into evidence testimony of an irrelevant alleged theft in violation[] of the requirements outlined in W.R.E. 404(b)?

The State presents the same issue, though it is expressed in greater detail.

## FACTS

[¶4]   In the Spring of 2012, Ms. Payseno worked for Rocky and Charlie McClintock at a convenience store in Thermopolis, Wyoming.  She also took care of the McClintocks' home, which was located outside of Thermopolis, while they were away for a few days in April 2012.

[¶5]   Tracy Loughlin kept his horses and horse trailer at the McClintocks' place.  The trailer contained a tack compartment where he stored his saddles.  On July 28, 2012, Mr. Loughlin went to a roping.  After returning his horses and the trailer to the McClintocks' place, he left town for two weeks to work in the oilfields of North Dakota.  On August 14, 2012, he discovered two of his saddles were missing from the trailer tack compartment.  The saddles had been purchased from the White Horse Country Store in Thermopolis and were stamped with the White Horse mark.

[¶6]   Mr. Loughlin reported the missing saddles to law enforcement, and Lieutenant Daniel Pebbles of the Hot Springs County Sheriff's Office investigated.  Lt. Pebbles checked the local pawn shops to see if any White Horse saddles had recently been pawned or sold and learned about an on-line service showing pawned items.  Using the

service, he discovered two saddles matching the descriptions of Mr. Loughlin's missing saddles had been sold to a pawn shop in Billings, Montana on July 30, 2012. The pawn shop documents identified the person who sold the saddles as Ms. Payseno, and included her statement that she had owned the saddles for two years.

[¶7]    Lt. Pebbles called the telephone number on the sales ticket and reached Ms. Payseno. He interviewed her at the law enforcement center and asked whether she had recently pawned anything. She explained that she had purchased two saddles for $300 from "some guy" at Maverick, who she described as a "young dope-head." She claimed not to know the young man's name or where he had obtained the saddles. Ms. Payseno told Lt. Pebbles that she took the saddles to Billings and sold them to a pawn shop for $600. She also told him that she had pawned her own saddle in Riverton in August 2012.

[¶8]    Ms. Payseno's sister, Kim Dooper, claimed the saddle pawned in Riverton belonged to her. Ms. Dooper stated Ms. Payseno had given her the saddle years before and she had loaned the saddle back to Ms. Payseno in the spring or early summer of 2012 so she could use it for roping. After learning it had been pawned, Ms. Dooper went to Riverton and retrieved the saddle from the pawn shop.

[¶9]    The State charged Ms. Payseno with three crimes regarding the theft and sale of Mr. Loughlin's saddles: larceny; wrongful disposal of property; and burglary. In response to Ms. Payseno's demand for notice of the State's intent to offer other bad acts evidence under W.R.E. 404(b), the State announced it was going to offer the following evidence: "Charges and/or prior bad acts: Report by Kim Dooper to the Cody Police Department, dated August 29, 2012, regarding the theft, possession and disposing of a saddle owned by Kim Dooper at the Double C Pawn Shop in Riverton, Wyoming." The State offered the evidence for a number of purposes, including: plan, motive, opportunity, intent, preparation, knowledge, identity, or absence of mistake or accident.

[¶10] Ms. Payseno filed a motion in limine to exclude the other bad acts evidence, asserting it was not offered for a proper purpose but only to show that she had a disposition to commit crimes. She also asserted it was irrelevant and unfairly prejudicial. The district court held a hearing on the other bad acts evidence prior to trial. Ms. Payseno told law enforcement that she had purchased the saddles belonging to Mr. Loughlin from someone in the Maverick parking lot and sold them to a pawn shop in Billings, but she did not know they were stolen. The State urged the evidence of Ms. Payseno pawning her sister's saddle in Riverton would rebut her assertion that she was mistaken as to the origin of the two saddles sold in Billings and would show "motive, opportunity, intent, plan, knowledge, and absence of mistake or accident." The defense asserted the saddle pawned in Riverton involved a family dispute, no charges had ever been filed, and the State was offering the evidence for an "improper purpose." After the district court directed the prosecutor to be more specific about the purpose or purposes of the evidence, she argued it pertained to Ms. Payseno's preparation "in terms of the

2

process by which one pawns, the process by which one, you know, gets – takes an item to a pawn shop, and how that process [] worked." The defense countered that pawning an item does not indicate preparation.

[¶11] The district court ruled that it was going to admit the other bad acts evidence as relevant to the wrongful disposal of stolen property charge. It reasoned: "The process of pawning is similar and also goes to the lack o[r] absence of mistake or accident as it relates to that method of disposing of property, so I will allow it for that reason, and only for that reason." However, the order entered by the district court seemed to provide more general grounds for admission:

> THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT:
>
> 1. The State seeks to introduce in its case-in-chief, evidence regarding the theft and pawn of Kim Dooper's saddle in or around August 201[2].
>
> 2. The proper basis for the introduction of the evidence is it tends directly to prove or disprove a consequential fact such as the absence of accident or mistake, planning and knowledge of how and where to dispose of stolen property.
>
> 3. The probative value of the evidence is not substantially outweighed by its potential for unfair prejudice. The evidence is probative and relevant to the crime as charged in Count II – Wrongful Buying, Receiving, Concealing or Disposing of Property.
>
> 4. The defendant or the State may request and propose a limiting jury instruction be given to the jury prior to deliberation.

[¶12] At trial, the district court allowed the State to play a video and audio recording of Lt. Pebbles' interview with Ms. Payseno at the law enforcement center. Defense counsel objected to the recording on several bases, one being that it included impermissible other bad acts evidence of Ms. Payseno pawning Ms. Dooper's saddle. Defense counsel argued the evidence was not admissible under Rule 404(b) because it occurred after the charged crimes and, therefore, was not traditional prior bad act evidence. The district court overruled the objection.

3

[¶13] During the interview, Ms. Payseno made the following statements regarding the saddles, including the one she pawned in Riverton:

Lieutenant Daniel Pebbles: . . . Well, let's talk about things you might have pawned recently in the last 30, 45 days.

Terri Payseno:     Uh-huh.

Lieutenant Daniel Pebbles:  Maybe longer.

Terri Payseno:     Yeah, I've done some saddles.

Lieutenant Daniel Pebbles: Okay.  Where did you get them?

Terri Payseno:     Bought them.

Lieutenant Daniel Pebbles:  From who [sic]?

Terri Payseno:     Some guy at Wal-Mart – not Wal-Mart, Maverick.

Lieutenant Daniel Pebbles: Some guy at Maverick. Probably don't know his name either; do you?

Terri Payseno:     Just some young dope-head.

Lieutenant Daniel Pebbles: Okay. What kind of saddles were they?

Terri Payseno:     I don't know – well, I pawned my own, but that –

Lieutenant Daniel Pebbles: Your own saddle?

Terri Payseno:     Yeah.

Lieutenant Daniel Pebbles:  Where did you do that at[?]

Terri Payseno:     In Riverton.

4

Lieutenant Daniel Pebbles: Riverton?    What    pawn shop?

Terri Payseno:        Double D [sic], I think.

(Video Stopped).

The Court:    Objection?

[Defense Counsel]: On   this   particular   questioning regarding the Riverton saddle[].

The Court:    Nature of your objection?

[Defense Counsel]:  404(b).

The Court:    Overruled.

(Video Started Again)

Lieutenant Daniel Pebbles: You still got the receipt?

Terri Payseno:        I think so.

Lieutenant Daniel Pebbles:  That would be awesome.

Terri Payseno:        Double D [sic].

Lieutenant Daniel Pebbles:  Mind if I look at it?  This was on around the 8th of August or 3rd of August; is that correct?

Terri Payseno:        Let me see.

Lieutenant Daniel Pebbles:            . . .    So – and this saddle was your saddle; correct[?]

Terri Payseno:        Uh-huh.

Lieutenant Daniel Pebbles:  Where did you get this saddle at?

Terri Payseno:        (Inaudible).

5

Lieutenant Daniel Pebbles: Who was your sister?

Terri Payseno: Kim Dooper.

Lieutenant Daniel Pebbles: Kim Dooper, does she live in town?

Terri Payseno: Hu-huh, up in Cody.

Lieutenant Daniel Pebbles: She lives in Cody? Other than being – it's described here as just a saddle, other than being just a saddle, what brand is it?

Terri Payseno: It's a handmade or custom-made one that I bought in Cody like 15, 16 years ago.

Lieutenant Daniel Pebbles: So?

Terri Payseno: I can't remember the name of it, but . . .

Lieutenant Daniel Pebbles: Okay. Mind if I get a copy of this?

Terri Payseno: Go ahead.

. . .

Lieutenant Daniel Pebbles: Any other saddles you might have pawned?

Terri Payseno: I took some to Billings.

[¶14] Later in the trial, the district court held another hearing in chambers on the other bad acts evidence. Defense counsel renewed his objection to the evidence because Rule 404(b) pertains mostly to prior bad acts. He maintained that the evidence could not be admitted for the purpose of showing preparation when it occurred after the charged crime. The district court pointed out that the rule applies to all other bad acts evidence, not just prior bad acts, and noted its ruling from the pre-trial hearing. After some more discussion, the district court posed the following query to the prosecution:

THE COURT: All right. [Prosecutor], can you explain to the Court, we had previously ruled, or the Court had previously ruled that it could be used for showing the absence of accident or mistake. We're not hearing any evidence of that at this juncture. Can be used to show planning; however, it may be difficult to equate that since this 404(b) evidence occurred after this alleged larceny and sale of the property to the pawn shop.

[Prosecutor]: And Your Honor, first of all we reviewed this during the hearing and the supporting documentation of this was provided to Counsel including a copy of the pawn ticket for Double C Pawn which is clearly dated on the 8th of August. So we have already reviewed this, and the arguments were made and nothing has changed, there's been nothing new, and we believe that the argument remains that it shows that Ms. Payseno plans and has knowledge and certainly absence of mistake or accident in terms where and how to pawn a saddle. . . .

[¶15] In response to the district court's request for further clarification, the prosecutor stated that the other bad acts evidence pertained to the wrongful disposal of property charge by showing that Ms. Payseno "knows how, when and where to dispose of saddles, I think it goes to the fact that she's familiar with pawn shops. . . . [I]t goes to her ability to be able to plan to dispose of stolen property. . . ." She also maintained the evidence showed absence of accident or mistake because it would "certainly go to whether or not Ms. Payseno actually even owned the saddle," since Ms. Payseno asserted she owned the saddles traded at both pawn shops when she did not. The district court concluded it would "continue with its prior ruling" that the other bad acts evidence was admissible. After that, Ms. Dooper testified the saddle Ms. Payseno pawned in Riverton actually belonged to her and she had only loaned it to Ms. Payseno for roping.

[¶16] The jury returned a verdict finding Ms. Payseno guilty of all three offenses: larceny; wrongful disposal of stolen property; and burglary. After sentencing, Ms. Payseno appealed to this Court.

## DISCUSSION

[¶17] The district court admitted, under Rule 404(b), testimony that Ms. Payseno pawned her sister's saddle in Riverton as appropriate evidence on the charge that she wrongfully disposed of Mr. Loughlin's saddles at the pawn shop in Billings. Wyo. Stat. Ann. § 6-3-403(a) (LexisNexis 2013) states:

(a) A person who buys, receives, conceals or disposes of property which he knows, believes or has reasonable cause to believe was obtained in violation of law is guilty of:

(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is one thousand dollars ($1,000.00) or more[.]

*See also Garcia v. State,* 777 P.2d 1091, 1095 (Wyo. 1989); *Capshaw v. State,* 737 P.2d 740, 745 (Wyo. 1987) (setting out the elements of wrongful receiving, concealing or disposing of property).

[¶18]   The district court instructed the jury on the elements of the charge as follows:

The elements of the crime of *Wrongfully Taking or Disposing of Property,* as charged in Count II of the *Information* in this case, are:

1.     On or between July 29, 2012 and August 14, 2012
2.     In Hot Springs County, Wyoming
3.     The Defendant, TERRI ANN PAYSENO
4.     Disposed of property, to wit: two (2) White Horse saddles, belonging to Tracy Loughlin valued at $1,000.00 or more
5.     Which the Defendant knew, believed, or had reasonable cause to believe was obtained in violation of law.

[¶19] W.R.E. 404(b) prohibits evidence introduced "'only to demonstrate that the defendant has a disposition to commit crimes.'" *Cazier v. State,* 2006 WY 153, ¶ 30, 148 P.3d 23, 33-34 (Wyo. 2006), quoting *Gleason v. State,* 2002 WY 161, ¶ 17, 57 P.3d 332, 340 (Wyo. 2002).  The rule states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

W.R.E. 404(b).  We have adopted a mandatory procedure for testing the admissibility of uncharged misconduct evidence.  *Gleason,* ¶ 18, 57 P.3d at 340.  To be admissible,

> (1)     the evidence must be offered for a proper purpose;  (2) the evidence must be relevant;  (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice;  and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Id.  See also Roeschlein v. State,* 2007 WY 156, ¶ 8, 168 P.3d 468, 471 (Wyo. 2007).

[¶20] Ms. Payseno objected to the evidence regarding her pawning the saddle in Riverton; accordingly, we review its admissibility under the abuse of discretion standard. *Cazier,* ¶ 10, 148 P.3d at 28.

> A trial court's decision on the admissibility of evidence is entitled to considerable deference, and will not be reversed on appeal unless the appellant demonstrates a clear abuse of discretion. As long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal.
>
> Even if the district court admitted evidence in error, we must consider whether the error was prejudicial or harmless. Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made. Prejudicial error requires reversal, while harmless error does not.

*Nelson v. State,* 2010 WY 159, ¶ 29, 245 P.3d 282, 289 (Wyo. 2010), quoting *Reay v. State,* 2008 WY 13, ¶ 8, 176 P.3d 647, 650 (Wyo. 2008) (citations omitted).

[¶21] The first factor considered in determining admissibility under Rule 404(b) is whether the evidence is offered for a proper purpose.  The district court ruled the evidence of Ms. Payseno pawning her sister's saddle was admissible for a proper purpose because it tended to directly "prove or disprove a consequential fact such as the absence of accident or mistake, planning and knowledge of how and where to dispose of stolen property."  Ms. Payseno argues the evidence that she pawned her sister's saddle after the charged offenses had already occurred did not show that she knew how to dispose of stolen property at the time of the charged offenses.

[¶22]  Rule 404(b) pertains to all other bad acts, not just prior bad acts.  29 Am. Jur. 2d Evidence § 420 (2014) (noting evidence of an extrinsic offense committed after the charged act may be admissible).  However, in order for an act to be properly admissible to show planning or preparation for the charged crime, it needs to be committed within a

relevant time period. The State did not adequately explain how the fact Ms. Payseno pawned a saddle after she had already sold the stolen saddles to a different pawn shop demonstrated that she knew how to dispose of stolen property at the time of the charged offense.[1] Consequently, the State failed to demonstrate the evidence was admissible to show preparation or plan under Rule 404(b).

[¶23] Furthermore, other bad acts evidence is only admissible if it is relevant and probative to a fact in issue. *Sarr v. State,* 2007 WY 140, ¶¶ 17-19, 166 P.3d 891, 896-97 (Wyo. 2007). Ms. Payseno admitted that she sold the saddles to a pawn shop in Billings, so she obviously was aware of how to transact business in a pawn shop. That aspect of the case was not, therefore, in issue and the evidence was not relevant.

[¶24] The district court apparently also concluded the evidence was admissible to show lack of mistake or accident about where the saddles came from, i.e., whether they were stolen or not. The district court's reasons for reaching that conclusion are not entirely clear in the record; however, the State claims the district court ruled the evidence was admissible to show Ms. Payseno's "guilty knowledge." It asserts the circumstances of the case at bar are similar to the circumstances in *Huddleston v. United States,* 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), where the United States Supreme Court allowed the use of other bad acts evidence to demonstrate the defendant was aware the large number of video tapes he possessed and sold were stolen. The other bad acts evidence admitted in that case involved the defendant's sale of allegedly stolen televisions a couple of months before the charged incident and attempted sale of stolen appliances about a month after the charged crime. *Id.* at 682-83, 108 S. Ct. 1497, 98. The United States Supreme Court set out the four-part test for admission of evidence under Rule 404(b) we adopted in *Vigil v. State,* 926 P.2d 351 (Wyo. 1996), and ruled the evidence of the defendant's other attempts to sell stolen merchandise was admissible to show he knew the video tapes were stolen. *Huddleston,* 485 U.S. at 691-92.

[¶25] *Huddleston* does not justify admission of the other bad acts evidence in this case. There, the circumstances involving the other stolen merchandise were very similar to the charged crime. By contrast, the situation involving Ms. Payseno's sister's saddle was quite different from the charged crime. There was a dispute over who actually owned the saddle when Ms. Payseno pawned it. The evidence showed that Ms. Payseno once owned the saddle and had either given it to her sister many years before or simply asked her sister to store it for her.

[¶26] In any event, it is clear Ms. Payseno legitimately possessed the saddle at the time she pawned it. In contrast, Mr. Loughlin had not entrusted his saddles to anyone. They

---

[1] The State argues on appeal that the district court did not admit the evidence for the purpose of showing planning or preparation. Our detailed review of the district court's various rulings in Paragraphs 11 and 15, above, contradicts the State's account of the district court's rationale.

were illegally removed from the tack compartment of his horse trailer without his knowledge or consent. The two situations were simply not sufficiently similar for the Riverton saddle incident to have any relevance to the issue of whether Ms. Payseno knew or had reason to know the saddles she pawned in Billings were stolen. The district court erred when it concluded the evidence of Ms. Payseno's subsequent pawning of her sister's saddle was admissible for the purpose of showing she had "guilty knowledge" of the other saddles' illicit origins. Given the State has not demonstrated the evidence was admitted for any proper purpose, we conclude the district court abused its discretion by allowing it into evidence.

[¶27] Our conclusion the evidence should not have been admitted does not, however, end the analysis. In order to justify reversal of Ms. Payseno's conviction, there must be a showing that she was prejudiced by the improper evidentiary ruling. Any error which "does not affect substantial rights shall be disregarded." W.R.Cr.P. 52(a); W.R.A.P. 9.04. *See also Roeschlein,* ¶ 14, 168 P.3d at 473. In general, an error in admission of other bad acts evidence will be considered harmful if there is a reasonable probability that in absence of the error the verdict would have been more favorable to the defendant. *Mersereau v. State,* 2012 WY 125, ¶ 29, 286 P.3d 97, 111 (Wyo. 2012); *Bishop v. State,* 687 P.2d 242, 247 (Wyo. 1984), abrogated on other grounds by *Vigil v. State,* 926 P.2d 351 (Wyo. 1996). However, when the properly admitted evidence against a defendant is overwhelming, an evidentiary error is harmless. *Id.*

[¶28] As we said earlier, the element in dispute with regard to the wrongful disposal of property charge was whether Ms. Payseno knew, believed, or had reasonable cause to believe the saddles were obtained in violation of law. The State's primary theory was that Ms. Payseno stole the saddles from Mr. Loughlin's trailer and then sold them to the pawn shop in Billings. Ms. Payseno told Lt. Pebbles that she had purchased the saddles from a "young dope-head" in the Maverick parking lot for $300. It is clear the jurors did not believe Ms. Payseno's explanation because they found her guilty of larceny and burglary as well as wrongful disposal of stolen property. Likewise, even if they did believe that she purchased the saddles from someone in the Maverick parking lot, they could have convicted her of wrongful disposal of property if they found she believed or had reasonable cause to believe the saddles were stolen.

[¶29] In *Vanvorst v. State,* 1 P.3d 1223 (Wyo. 2000), we discussed the requirements for proving a violation of § 6-3-403. We stated that "proof of mere naked possession of recently stolen property not aided by other proof that the accused received it with knowledge that it was stolen, is insufficient" to justify a conviction. *Id.* at 1228, citing *Tageant v. State,* 673 P.2d 651, 654 (Wyo. 1983). Instead, there must be evidence from which a jury could conclude beyond a reasonable doubt the accused knew or had reason to believe the property was stolen when he or she received, concealed or disposed of it. We supplied a non-exhaustive list of factors which, when combined with the unexplained

possession of stolen property, are sufficient to support a finding of the defendant's guilty knowledge:

> (a) attempts to dispose of the property at an amount considerably below its fair value; (b) an unusual manner of acquisition or dealing with the property; (c) knowledge of the accused beforehand of the location, nature, or value of the property later stolen; (d) prior possession of other stolen property by the accused; (e) the relative length of time between the theft and fact of possession; (f) admissions or contradictory or evasive statements by the accused; and (g) other incriminating evidence and circumstances surrounding the entire incident.

*Vanvorst,* 1 P.3d at 1228 n.1, citing *Tageant,* 673 P.2d at 655.

[¶30] Ms. Payseno was familiar with the McClintocks' property where Mr. Loughlin kept his horses and trailer with his tack. She admitted she was in possession of property stolen from Mr. Loughlin's trailer and she sold the saddles to the pawn shop in Billings. The pawn shop receipt further confirmed her involvement as it contained her name and telephone number. Mr. Loughlin told Lt. Pebbles that he used the saddles at a roping on July 28, 2012, and then placed them back in his trailer. Ms. Payseno sold the saddles to the Billings pawn shop just two days later, on July 30, 2012, but she falsely stated she had owned the saddles for two years. Ms. Payseno told Lt. Pebbles she purchased the saddles from a "young dope-head" in the Maverick parking lot for $300 during the last half of July 2012. When she purchased the saddles, she did not ask the young man's name or where he got the saddles. The evidence at trial showed she had experience with saddles so she had some idea as to their value and she told Lt. Pebbles the saddles were "nice." The owner of the White Horse Country Store testified that Mr. Loughlin had purchased each of the saddles new for approximately $2,100. He also testified the value of each of the used saddles would have been between $1,200 and $1,500.

[¶31] The trial evidence satisfied many of the factors identified in *Vanvorst* and *Tageant* and demonstrated that Ms. Payseno knew or should have known the saddles were stolen. Ms. Payseno had personal knowledge of and access to the place from which the saddles were stolen; her explanation of where she had gotten the saddles was evasive, incomplete and very unusual; she sold the saddles for substantially less than their fair value and lied about how long she had owned the saddles. Under these circumstances, the evidence that Ms. Payseno knew or had reason to believe the saddles were stolen was overwhelming. Any error in admitting the irrelevant evidence regarding Ms. Payseno's pawning of her sister's saddle was, therefore, harmless.

[¶32] Affirmed.