Cheryl Marie **STAGNER**, Appellant
(Defendant),

v.

The **STATE** of **Wyoming**,
Appellee (Plaintiff).

No. 89–242.

Supreme Court of Wyoming.

Nov. 25, 1992.

Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Terrance R. Martin, Student Intern, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and Karen A. Byrne, Senior Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE,* URBIGKIT and GOLDEN, JJ.

URBIGKIT, Justice.

Cheryl Marie Stagner (Stagner) was convicted of receiving or concealing a stolen Lincoln Continental Mark IV in violation of Wyo.Stat. § 6–3–403(a)(i) (1988).[1] She testified that another defendant told her he had purchased the car. She asked the trial judge to give a "Mistake of Fact" instruction to the jury as part of her theory of

---

* Chief Justice at time of oral argument.

1. Wyo.Stat. § 6–3–403(a)(i) provides:

   (a) A person who buys, receives, conceals or disposes of property which he knows, believes or has reasonable cause to believe was obtained in violation of law is guilty of:

   (i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is five hundred dollars ($500.00) or more[.]

defense. The trial judge refused. We reverse.

Because we reverse the conviction based upon the issue of the refused "Mistake of Fact" defense instruction, we do not address the additional issues advanced by Stagner.

## FACTS

The prosecutor presented several witnesses to prove Stagner was guilty of receiving or concealing stolen property. First, a high school teacher testified he had a 1973 Lincoln Continental Mark IV stolen from his locked garage in Huntley, Montana. A Wyoming rancher from Fremont County testified that he had called the Bureau of Indian Affairs (BIA) in the early hours of January 10, 1989 to report two vehicles heading onto his absent neighbor's ranch.

The two BIA agents testified that they responded to the rancher's call. They discovered an area that was cluttered with junk vehicles when they arrived at the neighboring property. There they spotted a pickup in pretty good shape that had new Wyoming license plates. One agent approached the pickup on foot and had to peer inside before seeing two people lying down on the seat. He identified Stagner as one of those people. The other agent identified Hal Alcorn (Alcorn) as the other person. One agent testified that a tribal game warden, who had showed up to assist them, spotted a Lincoln Continental Mark IV. The engine was still warm but had no license plates. When they checked the vehicle identification numbers, they discovered that the car had been stolen. When they searched Stagner pursuant to her arrest, they discovered the keys to the Lincoln in her coat pocket. They also found three handguns in the pickup which Stagner indicated were hers.

Another prosecution witness, Les Kilwein (Kilwein), testified that he brought the Lincoln to Fremont County and showed it to Alcorn and Stagner. Although his testimony incriminated himself as well as Stagner, he waived his privilege against self-incrimination apparently on the advice of his defense counsel.

Kilwein testified the stolen car originally had no license plates when he took possession of it in Montana and that he attached a Wyoming license plate to the back. When he got to Morton, Wyoming, he stopped at the Stage Stop Bar. He testified he met Stagner at that bar and told her the Lincoln was stolen. He said she responded by saying they had to get the car off the bar property. Kilwein testified that Stagner drove the car, with him as a passenger, to a field with a trailer house and parked behind the trailer.

Alcorn testified he followed in the pickup as Stagner led him to the ranch around four in the morning. He also testified that when they saw the lights of the BIA agents, Stagner and he tried to figure out a plan of escape and that Stagner was armed.

In attempting to refute this evidence, Stagner testified to quite a different story. Her testimony, relevant to her requested but refused jury instruction, included the claim that Kilwein told her he bought the car in Billings, Montana and had traded a Camaro plus $150 dollars for the car. She further testified that he insisted she take the Lincoln for a drive. She said that when she asked how he could afford the car, he again said he had traded a Camaro plus $150 for it. She also testified that she told the BIA officers that she did not know the car was stolen.

When it came time for the trial judge to give the jury its instructions, the defense attorney asked for a "Mistake of Fact" jury instruction, but the trial judge refused.

The instruction stated:

An act committed or an omission made under a mistake of fact which nullifies the requisite intent as an element of the crime charged is a defense to that crime.

Thus a person is not guilty of a crime if he commits an act or omits to act under an honest and reasonable belief in the existence of certain facts and circumstances which, if true, should make such act or omission lawful.

## STANDARD OF REVIEW

The standard of review for a requested but refused jury instruction is established by *Oien v. State*, 797 P.2d 544, 547 (Wyo. 1990) and *Thom v. State*, 792 P.2d 192, 195 (Wyo.1990). "The refusal to allow an instruction requested by the defendant when due process requires the defendant's instruction be given is reversible error per se." *Oien*, 797 P.2d at 549.

In *Thom*, 792 P.2d at 195, we said "a defendant has the right to have instructions on his theory of the case or his theory of defense presented to the jury if the instructions sufficiently inform the jury of the theory or defense and if competent evidence exists which supports the law expressed in the instructions." In *Oien*, 797 P.2d at 549, we said we view the evidence in a light favorable to the accused and that "the accused's testimony must be taken as entirely true" to determine if the evidence is competent. *See Amin v. State*, 695 P.2d 1021 (Wyo.1985); *Patterson v. State*, 682 P.2d 1049 (Wyo.1984); and *Reid v. United States*, 581 A.2d 359 (D.C.App.1990).

■ The standard of criminal law that the accused has a right to have a theory of the defense instruction, if fairly supported by the evidence, *see* 4 Charles E. Torcia, Wharton's Criminal Procedure § 538 (12th ed. 1976), has a strong and continued history in Wyoming precedent. "[T]he defendant had a right to have his main defense in the case affirmatively presented to the jury." *State v. Hickenbottom*, 63 Wyo. 41, 69, 178 P.2d 119, 131 (1947). *See Goodman v. State*, 573 P.2d 400 (Wyo.1977); *Thomas v. State*, 562 P.2d 1287 (Wyo. 1977); and *Blakely v. State*, 474 P.2d 127 (Wyo.1970). *See also Best v. State*, 736 P.2d 739 (Wyo.1987); *Naugher v. State*, 685 P.2d 37 (Wyo.1984); *Patterson*, 682 P.2d 1049; *Scheikofsky v. State*, 636 P.2d 1107 (Wyo.1981); and *Benson v. State*, 571 P.2d 595 (Wyo.1977).

## DISCUSSION

■ Whether or not the evidence is competent to support the request for the "Mistake of Fact" jury instruction is critical to our decision. Stagner twice testified that Kilwein told her he bought the car in Billings, Montana and had traded a Camaro plus $150 for it. Under *Oien* and *Thom*, such testimony must be taken as entirely true for purposes of testing the competency of evidence needed to support a theory of defense jury instruction. Taking her testimony for the purposes of this review, the evidence is competent to support a "Mistake of Fact" instruction.

■ Stagner's testimonial evidence was sufficient to refute Kilwein's assertion and support the giving of the instruction. It is for no one but the jury to decide who is credible. "The question is whether the defensive evidence raised the issue of mistake of fact, because if it did appellant was entitled to an affirmative submission on the issue." *Lynch v. State*, 643 S.W.2d 737, 738 (Tex.Cr.App.1983). *See People v. Ellison*, 126 Ill.App.3d 985, 81 Ill.Dec. 222, 466 N.E.2d 1024, 1032 (1984) and *Willis v. State*, 790 S.W.2d 307 (Tex.Cr.App.1990). The refusal to give the instruction under this circumstance violated federal and Wyoming due process. *Best*, 736 P.2d 739; *Blakely*, 474 P.2d 127; *Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896).

■ The theory of the case instruction, where appropriate evidence exists, is a basic tenet of criminal law and a procedural concomitant of due process. Wyo. Const. art. 1, § 6. The commonly accepted enunciation is "[a] requested instruction on a party's theory of prosecution or theory of defense must be given if such theory is fairly supported by the evidence." 4 Charles E. Torcia, Wharton's Criminal Procedure, *supra*, § 538 at 11. Initially phrased in *Stevenson*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 and restated by Chief Justice Rehnquist in *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988):

As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor. *Stevenson v. United States*, 162 U.S. 313[, 16 S.Ct. 839, 40

L.Ed. 980] (1896); 4 C. Torcia, Wharton's Criminal Procedure § 538, p. 11 (12th ed. 1976) * * *. A parallel rule has been applied in the context of a lesser included offense instruction * * *.

The Wyoming Supreme Court has generally recognized the due process component of this principle which essentially addresses both the accused's right to defend and the jury's right to weigh and assess evidentiary validity and sufficiency. *Blakely*, 474 P.2d 127. *Goodman*, 573 P.2d at 409 (quoting 23A C.J.S. *Criminal Law* § 1313) (emphasis added) teaches us that

> "the weight and sufficiency of the evidence to establish a fact in issue are a question for the jury, *it is generally recognized that any evidence which will authorize the jury to find on it, although in the opinion of the court it may be weak, inconclusive, or unworthy of belief, is sufficient to justify an instruction on the issue raised by such evidence, and even positive testimony is not required, for it is sufficient if the fact in issue reasonably may be inferred from circumstances proved.* However, in order to warrant giving an instruction, the evidence should be sufficient fairly to raise the question involved therein."

■ The review required by the trial court, *Reid*, 581 A.2d at 368, directs attention only to the existence of an evidentiary basis for the jury's consideration and not a criteria of some convincing character of the evidence as analyzed by the trial court or the appellate jurist.[2] *Oien*, 797 P.2d 544; *Best*, 736 P.2d 739; *Dykes v. State*, 319 Md. 206, 571 A.2d 1251 (1990); *State v. Aubert*, 120 N.H. 634, 421 A.2d 124 (1980); *Willis*, 790 S.W.2d 307; *Lynch*, 643 S.W.2d 737.

Because Stagner was entitled to the theory of defense instruction she requested, under *Oien* and *Thom*, we reverse.

MACY, Chief Justice, dissenting.

An accused has a right to have a theory-of-defense instruction given to the jury if the instruction is supported by competent evidence. *Pearson v. State*, 811 P.2d 704, 710 (Wyo.1991); *McInturff v. State*, 808 P.2d 190, 195 (Wyo.1991). The test is not whether there was any evidence but whether the evidence was competent.

It is inconceivable that a jury would find that Stagner did not know the vehicle was stolen in light of all the evidence to the contrary. This is especially true since the jury was instructed that it must find beyond a reasonable doubt that Stagner "knew, believed or had reasonable cause to believe [the Lincoln automobile] was obtained in violation of the law."

Stagner's constitutional right to a fair trial was satisfied.

THOMAS, Justice, dissenting, with whom MACY, Chief Justice, joins.

I must dissent from the decision in this case. It is contrary to our well-established and long-standing jurisprudence concerning theory of the case instructions. In our work, as well as in other fields of endeavor, it is important for the left hand to be aware of what the right hand is doing. I am satisfied that this decision is inconsistent with the most recent cases of the court in this area, *Virgilio v. State*, 834 P.2d 1125 (Wyo.1992), and *Bouwkamp v. State*, 833 P.2d 486 (Wyo.1992). Without attempting to be exhaustive, this decision also conflicts with a series of decisions in just the past five years. *Dice v. State*, 825 P.2d 379 (Wyo.1992); *Pearson v. State*, 811 P.2d 704 (Wyo.1991); *Amin v. State*, 811 P.2d 255 (Wyo.1991); *Thom v. State*, 792 P.2d 192 (Wyo.1990); *Murray v. State*, 776 P.2d 206 (Wyo.1989); *Smith v. State*, 773 P.2d 139 (Wyo.1989); *Prime v. State*, 767 P.2d 149 (Wyo.1989); *Simonds v. State*, 762 P.2d 1189 (Wyo.1988); *Phillips v. State*, 760 P.2d 388 (Wyo.1988); *Miller v. State*, 755 P.2d 855 (Wyo.1988); *Griffin v. State*, 749 P.2d 246 (Wyo.1988); and *Best v. State*, 736 P.2d 739 (Wyo.1987). The justification for

---

**2.** What the appellate jurist expects the trial court to do is not the appropriate test to justify denial to that jury of a decisional responsibility. The knowledgeable Fremont County jury in Lander, Wyoming can more responsively weigh believability from the live witnesses' testimony and demeanor than can the appellate court from a cold record in Cheyenne, Wyoming.

this departure, if there is any, is essentially mystical. Suffice it to say that the view of the dissenting justice in *Virgilio* and *Bouwkamp* now has become the view of the majority in this case.

Cheryl Marie Stagner (Stagner) went to trial on her plea of not guilty to the crime of receiving stolen property in violation of Wyo.Stat. § 6–3–403(a) (1988). That statute makes it an offense for any person to receive property **"which he knows, believes or has reasonable cause to believe was obtained in violation of law * * * [emphasis added]."** The mistake of fact upon which the majority asserts that Stagner was entitled to a theory of defense instruction is premised upon her testimony that she did not know the property was stolen, i.e., she did not know it had been obtained in violation of law. In *Bouwkamp*, 833 P.2d at 490–491, this court said:

> Theory of defense instructions are to be derived from and address criminal defenses provided for by statute or acknowledged by this court. "Common-law defenses are retained unless otherwise provided by this act." Wyo.Stat. § 6–1–102(b) (June 1988). Additionally, this court has discussed acceptable defenses, notably in *Keser v. State*, 706 P.2d 263, 269 (Wyo.1985). *See also* 1 Paul H. Robinson, *Criminal Law Defenses* § 21, 70 n. 1 (1984); 1 Charles E. Torcia, *Wharton's Criminal Law* § 39 (14th ed. 1978). Bouwkamp's "theory of defense" does not state a defense recognized in Wyoming by statute or judicial decision.

> \*    \*    \*    \*    \*    \*

> Bouwkamp did not rely on a defense recognized by Wyo.Stat. § 6–1–102 or this court that would merit a theory of the case instruction. **Instead, his true defense was the simplest and most direct of all: he denied guilt of the crime charged. He argued he was not guilty of killing Millox, although he was willing to admit that he helped cover up the murder. In other words, he defended by claiming to be innocent of the crime charged. On this argument he received adequate instructions** (emphasis added).

In *Virgilio*, this court held that instructions are sufficient if they permit an appropriate argument to the jury. I am satisfied that the circumstances in this case, as I will explain more fully, fit well within *Bouwkamp* and *Virgilio*, and that no error occurred in the failure to give the claimed theory of defense instructions. If proof of the offense charged depends upon proof of knowledge, belief, or reasonable cause to believe, as this offense does, then any instruction upon mistake with respect to that knowledge or belief is superfluous.

The material facts in this case are not difficult, although there are some nuances not mentioned in the majority opinion. On November 12 or 13, 1988, a 1973 Lincoln Continental Mark IV was stolen from a garage in Huntley, Montana. In the early morning hours of January 10, 1989, the same automobile was located on some rural property owned by an acquaintance of Stagner. Stagner was there with a friend named Hal Alcorn. She and Alcorn were discovered while attempting to hide by lying down in the front seat of Alcorn's pickup. Stagner was searched, and keys to the Lincoln were discovered in her pocket.

If there is any complexity in the facts found in the record, that is attributable to different versions given by the participants. Each of the witnesses told a different story at trial and, in some instances, behavior was reported sufficiently bizarre as to be perceived incredible. The chief testimony in the State's case was the incrimination of Stagner by a witness who had stolen the car and who testified that Stagner knew the car was stolen because he told her it was stolen. Stagner's defense was that she did not know the car was stolen.

Stagner asserted that she was entitled to an instruction on the defense of mistake of fact. The proffered instruction stated:

> An act committed or an omission made under a mistake of fact which nullifies the requisite intent as an element of the crime charged is a defense to that crime.

> Thus a person is not guilty of a crime if he commits an act or omits to act under an honest and reasonable belief in

the existence of certain facts and circumstances which, if true, should make such act or omission lawful.

As the evidentiary predicate for the claim to entitlement to a theory of defense instruction, Stagner's story was that, while she really wanted to retire for the evening, Alcorn had insisted that she drive him to her acquaintance's property in the stolen Lincoln because his truck was low on gas. His purpose in going there was to retrieve a panel truck from the acquaintance's property, which Alcorn believed Stagner's acquaintance had stolen from a friend of Alcorn's who lived in Rawlins. Alcorn drove his pickup and Stagner drove the Lincoln to the acquaintance's property. The first thing they did, after reaching their destination, was to siphon gasoline out of the Lincoln to use in Alcorn's pickup.

When the officers arrived at the scene, Stagner told them that she didn't know anything about the Lincoln nor how it came to be at that place. She also testified that a man named Les Kilwein, who had "possession" of the car just prior to her "possession" of it, told her he had purchased it, and she did not know it was stolen. Kilwein's contrary testimony was that he told Stagner the car was stolen, and Stagner then took it from him after agreeing to find a place where it could be safely stored.

The State's theory and its evidence were not complex. Stagner was discovered after she drove the stolen Lincoln to a remote location in the middle of the night. The car was taken to that place because it was not likely to be discovered there; Stagner knew the owner of the property was out of town and wouldn't know the car was there; a number of different kinds of vehicles were located at the property, and the Lincoln probably would not have been noticed; and, if it were found, the probability was that the owner of the property would be the person suspected of taking it. There is a wealth of information, concededly in some instances circumstantial, supporting the State's theory. From the evidence, the jury could have found that Stagner did know, believe, or have reasonable cause to believe, that the Lincoln was stolen.

Stagner had borrowed a car from a friend in November to drive to Billings, Montana. The Lincoln was stolen from a smaller community only a few miles from Billings. A license plate from the car Stagner drove to Billings was found on the Lincoln, and the borrowed car was not returned by Stagner until later in the spring at which time it had a missing license plate. The car Stagner had borrowed was left in Billings for most of that period of five months. I emphasize that, when the officers interrogated Stagner at the site where the automobile was located, she told them she did not know anything about the Lincoln or how it came to be there. Based on her statement, it is difficult to understand, and she did not explain, why she had keys to the car in her pocket.

Our general rule is that a defendant has a right to an affirmative instruction on his theory of the case when there is competent and substantial evidence to sustain that theory, and the offered instruction is sufficient to apprise the trial court of the theory. Under those circumstances, the failure to affirmatively instruct the jury with respect to the defendant's theory of the case violates due process and is prejudicial error. *Naugher v. State*, 685 P.2d 37 (Wyo. 1984). The *Naugher* rule, however, is tempered by our corollary rule that such an instruction should not be based on evidence which, at best, raises a possibility, or leads to some conjecture, that is inconsistent with the objective facts. When reviewing the evidence to determine whether an instruction should be given, we review the evidence in the light most favorable to the defendant insofar as that is justified, and we do accept the testimony of the defendant as true. *Amin v. State*, 695 P.2d 1021 (Wyo.1985); *Patterson v. State*, 682 P.2d 1049 (Wyo.1984).

To the extent that reliance is placed upon *State v. Hickenbottom*, 63 Wyo. 41, 178 P.2d 119 (1947), that case must be distinguished. Obviously, it was a case involving a specific intent. I have no difficulty in understanding that a mistake of fact that would inhibit the presence of a specific intent is an appropriate theory of the case

as to which an instruction should be given. The argument based upon *Hickenbottom* is antithetical to our holding in *Capshaw v. State*, 737 P.2d 740 (Wyo.1987), that specific intent is not an element of the crime of receiving stolen property. In order to develop her theory of the case contention, however, Stagner's claim is that *Capshaw* must be distinguished and, in any event, does not justify denial of the proffered instruction. The trial court correctly relied upon *Capshaw* in refusing to give Stagner's proffered instruction.

Furthermore, if a concession were made that Stagner was entitled to a mistake of fact instruction, in the context of the facts of this case, the proffered instruction was so general and unfocused as to render it inefficacious in conveying anything of real significance to the jury. *Hatheway v. State*, 623 P.2d 741 (Wyo.1981). While it appears the proffered instruction is a pattern jury instruction, that fact does not relieve Stagner of the obligation to offer a properly worded instruction. A theory of the case instruction must relate to the case that has been presented to the jury, not to some generic circumstances or crime.

It may be true that, in our prior decisions, we have too casually repeated that a criminal defendant is entitled to a "theory of the case instruction." What we should have said is that a defendant is entitled to an instruction on the law that encompasses the theory of the case. When Stagner's "theory" is analyzed, the conclusion must be reached that "mistake of fact" had nothing to do with her defense. Her case was premised on her claim that she did not know the car was stolen. This was an element of the offense that the State had to prove beyond any reasonable doubt. In the light of other evidence presented, that was simply a matter for the jury to resolve in the context of credibility.

Mistake of fact is concerned with something entirely different from what Stagner contended. See 1 WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 5.1(b) (1986); Model Penal Code and Commentaries § 2.04 (Official Draft and Revised Comments 1985). In Stagner's case, virtually all of the circumstances proclaimed that the car was stolen, and the person who had possession of that stolen car testified that he told Stagner the car was stolen. Her contrary testimony in her defense was that Kilwein told her the car was his. This is not a "mistake of fact" situation. It simply presents the opportunity for the jury to resolve the credibility of the witnesses in favor of a finding of guilt or innocence (in this case guilt).

In my opinion, the jury was given all the instructions required or needed to resolve this case. Instruction No. 1 stated, in pertinent part:

On the other hand, it is the exclusive province of the jury to weigh and consider all evidence which is presented to it; to determine the credibility and reliability of all witnesses who testify before you; and from such witnesses and the evidence, to determine in this case whether the defendant is guilty as charged or that the evidence does not establish such guilt beyond reasonable doubt.

\*　　\*　　\*　　\*　　\*　　\*

The jury is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. You should take into consideration their demeanor upon the witness stand, their apparent intelligence or lack of intelligence, their means of knowledge of the facts testified to, the interest, if any, which a witness may have in the outcome of this trial, the prejudice or motives, or feelings of revenge, if any has been shown by the evidence.

You may take into consideration all of the facts and circumstances in the case, and give each such weight you think the same are entitled to, in the light of your experience and the knowledge of human affairs which you share with mankind in general.

Instruction No. 2 provided, in part:

It is the purpose of these instructions to provide you with basic propositions of law applicable to all the contentions of each party to the case. It is the jury's duty to determine whether any conten-

tion is supported by substantial evidence. Each party has a right to have the jury instructed on every claim and defense presented. It is the function of the jury to determine which contentions are valid in fact, based on the evidence presented and in accordance with the law so given.

In Instruction No. 4, the elements of the offense were articulated, and that instruction informed the jury, among other things that it was required to find, beyond a reasonable doubt, that Stagner knew, believed, or had reasonable cause to believe the car was obtained in violation of law. Instruction No. 6 advised the jury that, if it determined the car was recently stolen, it could infer that Stagner's possession was with knowledge that it was stolen unless "such possession is explained by the facts and circumstances in this case which are in some way consistent with the defendant's innocence."

The issue was not complex, and there was no need to explain it further to the jury. The proffered instruction would not have assisted the jury in resolving the simple question of whether Kilwein told Stagner the car was stolen or whether he told her it was his. Even if it did not believe Kilwein's testimony, the jury certainly could have inferred, beyond any reasonable doubt, from Stagner's other conduct, that she believed or had reasonable cause to believe the car was stolen. Alternatively, it simply had to consider whether it was satisfied there was reasonable doubt the State had failed to prove Stagner "knew, believed or had reasonable cause to believe [the Lincoln automobile] was obtained in violation of law."

In *State v. Lindsay*, 77 Wyo. 410, 418, 317 P.2d 506, 509 (1957), Mr. Justice Parker perhaps was prophetic as to this case in saying:

These instructions [defining the material elements of robbery and burglary] would seem to have adequately informed the jury as to the elements of robbery and **to have made unnecessary any explanation of what was *not* robbery** [emphasis added].

In Stagner's instance, the instruction that enumerated the elements of the crime charged was sufficient to inform the jury of the nature of the crime and to permit Stagner to argue that the evidence did not suffice to find her guilty.

Essentially, Stagner's effort, which this court now approves, is to have the trial court make her argument for her in its instructions. If this proffered instruction must be given, then in every instance, and not just in cases involving this offense, a defendant will be insisting that the trial court offer a theory of the case instruction that simply explains why the defendant didn't commit whatever crime is charged. I think the trial bench would have a difficult time avoiding the temptation to use such instructions, because certainly the State of Wyoming cannot get a case reversed because of an improper instruction. Then, of course, every closing argument on behalf of the defendant will commence with this phrase, "as the judge already has told you * * *." The net effect of requiring such an instruction is that the trial judge becomes an advocate for the defendant.

If the defendant is to be given that additional advantage, then it seems to me that the prosecution is entitled to a similar explanation by the trial court about its theory of the case. Having the court make the arguments for the parties is unnecessary; an unwarranted complication of the criminal process; and does not contribute anything beyond the instructions that are given on the elements of the offense in a case like this. Nothing more was required in this case to permit the jury to understand the defense relied upon by Stagner.

I dissent because the decision is not compatible with well-established precedent, and I am unable to fit it, or the decision in *Oien v. State*, 797 P.2d 544 (Wyo.1990), into the larger body of our jurisprudence. If these cases are for some reason *sui generis*, then we should reaffirm the usual rules and say that they do not apply to this case for some particular reason. Otherwise, when we develop inconsistent rules in different cases, as we do here, instead of assisting with a rational development of the law, we are

guilty of compounding confusion for the bench and the bar in the future.

I would affirm the judgment and sentence in this case.