Ramiro CHAVEZ–BECERRA,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 95–247.

Supreme Court of Wyoming.

Sept. 3, 1996.

Sylvia Lee Hackl, State Public Defender; Gerald L. Gallivan, Director, Defender Aid Program; Travis B. Samulski, Student Intern., for appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Sr. Assistant Attorney General; Georgia L. Tibbetts, Assistant Attorney General, for appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN,* and LEHMAN, JJ.

GOLDEN, Justice.

Appellant Ramiro Chavez–Becerra appeals his conviction on two counts of delivering a controlled substance. He claims reversible error occurred when the trial court refused to give his offered jury instruction on his theory of defense and claims plain error occurred when the trial court allowed the prosecutor to deliver an improper closing argument.

We affirm.

Chavez–Becerra presents these issues for our review:

I. Whether it was reversible error for the trial court to refuse to give defendant's theory of the case jury instruction or one of similar substance regarding the informants' reasons and motives to lie in their testimony which provided the only basis for conviction?

II. Did the trial court commit plain error when it allowed the prosecuting attorney, Ms. Nau, to use statements based on hearsay in her closing argument which were not relevant to the charges against Mr. Chavez–Becerra, but clearly suggested that the defendant was a well known violator, if not a career criminal and that such information should be used to corroborate informant testimony?

The State restates the issues as:

I. Did the District Court properly refuse Appellant's proffered jury instruction?

II. Was plain error committed by the prosecutor's statements in closing argument?

* Chief Justice at time of oral argument.

## FACTS

In January of 1994, Louise Burton, on probation from a 1989 drug conviction, purchased cocaine and delivered it to an informant working for the Laramie County Sheriff's Department. In February of 1994, Louise and Gerry Burton agreed to work as informants for the Laramie County Sheriff's Department. In return, Mrs. Burton hoped to avoid prison for delivery of cocaine charges and probation violations. The Burtons arranged two controlled cocaine purchases from Ramiro Chavez–Becerra. On March 3, 1994, Mrs. Burton placed a recorded telephone call to Chavez–Becerra from the sheriff's department and arranged to purchase an eight-ball of cocaine, about 3.5 grams. After being fitted with a recording device, given $200.00 in buy money, and having been searched, she met Chavez–Becerra at his residence while under constant surveillance by law enforcement officers and gave him the money. She then departed without receiving any cocaine. Chavez–Becerra left his home and drove to Greeley, Colorado. Upon his return, he left a message for Mrs. Burton. She went to the sheriff's department and returned the phone call which was recorded. Later that evening, wired, searched, and under surveillance, Mrs. Burton returned to Chavez–Becerra's home and received cocaine which she turned over to officers at the sheriff's department. On March 17, 1994, Gerry Burton made a recorded telephone call to Chavez–Becerra to arrange the purchase of another eight-ball of cocaine. The arranged buy was also recorded, buy money provided, and constant surveillance kept in the same manner as during Mrs. Burton's arranged purchase. Once again Chavez–Becerra made a trip to Colorado and was contacted by Mr. Burton that evening. Mr. Burton returned to Chavez–Becerra's home and picked up the cocaine and turned it over to officers. Approximately one month later, Chavez–Becerra was arrested for delivery of cocaine. A jury convicted him on two counts of delivery of a controlled substance and he now appeals.

## DISCUSSION

*Theory of Defense Instruction*

Chavez–Becerra contends that the trial court erred in failing to instruct the jury on his theory of defense, denying him a fair trial. At trial, Chavez–Becerra requested a drug addict instruction which stated:

You are instructed that a drug addict may have a motive for testifying falsely and for falsely accusing persons of supplying him with drugs, and further, that regular use of narcotic drugs may impair the witness's capacity to observe, remember and recall. A present or former drug addict is inherently a perjurer where his own interests are concerned, because of the possibility of being rewarded by the authorities. Examples of possible rewards are the dropping of charges presently pending against the witness and the recommending of a lighter sentence for a crime of which the witness has already been convicted. An addict witness faces the immediate threat of being kept from access to the drugs to which he is addicted, as well as the prospect of a long term prison sentence. These factors substantially increase the danger that the addict may color his/her testimony so as to place guilt on a defendant.

On appeal, Chavez–Becerra contends he was entitled to this instruction or one like it concerning the inherent bias of drug informers and claims it is reversible error for the trial court to have not instructed the jury on his theory of defense. The State contends the trial court properly instructed the jury on evaluating witness credibility when it gave this instruction at the start of the trial:

You will decide which witnesses you believe and how much weight you give their testimony. In deciding what you believe, you may consider anything about a witness which tends to prove or disprove truthfulness, including the following:

1. Conduct, attitude, and manner while testifying;

2. The physical and mental capacity to have heard or seen that about which the testimony relates;

3. Ability to remember and to tell here in Court what was heard or seen;

4. Reputation for honesty and truthfulness or for dishonesty and untruthfulness;

5. Whether the witness has a bias or prejudice, an interest in the outcome of the trial, or any other motive for not telling the truth; and

6. Whether the facts related are inherently believable or unbelievable[.]

■■ A criminal defendant is entitled to have the jury instructed on a defense theory if a timely submission is made of an instruction that correctly states the law and is supported by the evidence. *Bouwkamp v. State*, 833 P.2d 486, 490 (Wyo.1992). The defense must be recognized by statute or case law of Wyoming. *DeLeon v. State*, 896 P.2d 764, 768 (Wyo.1995). Thus, instructions which do not contain a proper statement of the law are properly refused. *Stapleman v. State*, 680 P.2d 73, 76 (Wyo.1984).

■■ Similarly, instructions not based on the evidence can be properly refused. While we have said even weak, inconclusive, or unworthy of belief evidence requires giving of the instructions, *Stagner v. State*, 842 P.2d 520, 523 (Wyo.1992), the instruction need not be given unless a reasonable person might conclude the evidence supports the defendant's position. *Best v. State*, 736 P.2d 739 (Wyo.1987); *Stagner*, 842 P.2d at 523. Evidence is to be viewed in a light favorable to the accused and taken as true to determine if evidence is competent. *Stagner*, 842 P.2d at 522.

■■ It is reversible error for a trial court to refuse to give a properly requested instruction, which is supported by the evidence, contains a correct statement of law and is not otherwise covered in the instructions. *Oien v. State*, 797 P.2d 544, 549 (Wyo. 1990). However, a defendant is not entitled to a particularly worded instruction where instructions given cover the substance of the requested instruction. *Channel v. State*, 592 P.2d 1145, 1151 (Wyo.1979). The court retains discretion in framing the instruction. *Witt v. State*, 892 P.2d 132, 142 (Wyo.1995).

■■ Just as the trial court can properly refuse an instruction which merely rephrases the jury's obligation to find all elements beyond a reasonable doubt, *Virgilio v. State*, 834 P.2d 1125, 1128 (Wyo.1992), a narrative recitation of defendant's version of the facts is unacceptable and may be refused if it gives undue emphasis to defendant's version of the facts. *Jansen v. State*, 892 P.2d 1131, 1140 (Wyo.1995); *Virgilio*, 834 P.2d at 1128; *Ellifritz v. State*, 704 P.2d 1300, 1302 (Wyo. 1985). Instructions which are clearly erroneous, confusing or unduly emphasize one aspect of the case are properly refused. *Madrid v. State*, 910 P.2d 1340, 1346 (Wyo.1996); *Simonds v. State*, 762 P.2d 1189, 1192 (Wyo. 1988); *Noetzelmann v. State*, 721 P.2d 579, 581 (Wyo.1986). Furthermore, instructions which contain detailed descriptions of the purported evidence and inferences drawn by defense counsel have been properly refused. *Jansen*, 892 P.2d at 1140; *Simonds*, 762 P.2d at 1192. An instruction which only comments on evidence favorable to the defendant without presenting a legally cognizable defense is not a theory of the case instruction and is properly refused. *Bouwkamp*, 833 P.2d at 491; *Phillips v. State*, 760 P.2d 388, 390 (Wyo.1988). There is no duty to give a theory of defense instruction that has not been requested.

■■ Chavez–Becerra defended himself against these charges by testifying that he was innocent and arguing that the Burtons falsely accused him in order to obtain leniency on the criminal charges pending against Louise Burton. An instruction that a drug addict is inherently a perjurer and an instruction that a drug informer who receives some benefit by his testimony has an inherent bias is not a theory of defense instruction recognized by Wyoming statute or decision. *See Prime v. State*, 767 P.2d 149, 154 (Wyo. 1989). This Court's decision in *Keser v. State*, 706 P.2d 263 (Wyo.1985), listed possible defenses to criminal actions. *Keser*, 706 P.2d at 269. Special instructions to the jury would be appropriate if one of these defenses applied. In this case, Chavez–Becerra's claim of innocence is a failure of proof defense and, in view of this Court's past decisions as to what constitutes a theory of defense, we do not believe that such an obvious concept can be elevated to a theory of defense and, therefore, such an argument does not necessitate a special instruction. We

agree with the view that, "[w]hat is required before the theory of the case rule comes into play is a more involved theory involving 'law' or fact, or both, that is not so obvious to any jury." *Laughlin v. United States,* 474 F.2d 444, 455 (D.C.Cir.1972), *cert. denied,* 412 U.S. 941, 93 S.Ct. 2784, 37 L.Ed.2d 402 (1973) (rejecting an instruction that if the jury believes defense testimony denying guilt, it should acquit).

■ Drug addict and informant instructions are properly characterized as cautionary instructions providing the jury with a standard by which to evaluate a witness' credibility. *United States v. Smith,* 692 F.2d 658, 660–61 (10th Cir.1982), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983); *Champion v. State,* 87 Nev. 542, 490 P.2d 1056, 1057 (1971). Cautionary instructions are given in a number of different situations and Chavez–Becerra correctly states that this Court has said that a cautionary instruction should be given concerning accomplice testimony in *Pike v. State,* 495 P.2d 1188, 1190 (Wyo.1972), and is sometimes given when an informant testifies. *LeBeau v. State,* 589 P.2d 1292, 1294 (Wyo.1979); *see also* BLACK'S LAW DICTIONARY 222 (6th ed. 1990). His reliance on *LeBeau* for contending that the court's failure to instruct is reversible error misreads the holding. At most, *LeBeau* requires a court to issue a cautionary instruction if the particular facts of the case require it. The particular facts of this case did not require the court to caution the jury to weigh the testimony of the Burtons' with greater care.

In *Pino v. State,* 849 P.2d 716 (Wyo.1993), the appellant-defendant argued that refusal of a similar cautionary instruction on a witness informant's testimony required reversal. This Court held no reversible error occurred because the instruction given, which was worded very similarly to the instruction given by the court in this case, properly instructed the jury on possible bias of informants and also left room for the defense to argue this issue in closing argument, which it did. *Id.* at 722. Under the particular facts of this case, the instruction given by the trial court covered possible bias of informants, the Burtons were extensively cross-examined on

the deal, and the issue was argued during closing argument. There was no error. It was also not error to refuse Chavez–Becerra's proposed drug addict instruction. Chavez–Becerra does not point to any evidence that Burton was a drug addict, only a past drug user. Additionally, the instruction was worded in an unacceptably argumentative manner. There was no error in refusing this instruction.

*Improper Closing Argument*

Chavez-Becerra alleges that the prosecutor's closing argument made without objection constitutes plain error. The relevant portions are as follows:

In his opening statement Mr. Serelson [defense counsel] characterized Mr. Chavez as an innocent member of the community. Law enforcement was familiar with Mr. Chavez prior to January of 1994. Law enforcement was familiar with Mr. Chavez when he lived at 2522 Thomes and knew that he lived there. Both the Burtons indicated that they had been buying cocaine from Mr. Chavez for some time, not on frequent occasion, but for some time. On March 3rd and on March 17th, Mr. Chavez delivers cocaine to the Burtons. I would submit that Mr. Chavez is not an innocent member of the community.

\* \* \* \* \* \*

Now, Mr. Chavez wasn't charged with anything because it is not a crime, that is correct, as Mr. Serelson said, just for the police to have information about you. That's not a crime; but that certainly tends to corroborate it when somebody else comes in who is buying cocaine and selling cocaine and says, by the way, my source is Ramiro Chavez, and then whoever that is, intelligence says, Ramiro Chavez, we know about him. We have heard about him previous to this.

No, he is not guilty because the Sheriff's Department has information about him, but it certainly ties in and helps corroborate the testimony and statements of Louise and Gerry Burton.

The Sheriff's Department when they do drug investigations don't just pick people's

names out of the air or out of the phone book. They don't flip through the phone book and say let's go buy drugs from this person today. They buy drugs from people that they have information on. They have information that this person has drugs available, that this person is selling drugs.

\* \* \* \* \* \*

If we are going to stop drug activity in Laramie County, it has to start somewhere, and I will submit to you it needs to start here.

 He claims the argument is referring to testimony which was inadmissible hearsay and that, in violation of WYO.R.EVID. 404, the prosecutor improperly argued he should be convicted because the police had information on his past bad acts which were evidence of his criminal disposition.

During cross-examination of the investigating officer, defense counsel asked this:

Q. And that there is an extensive network of law enforcement and others providing information regarding drug activity.

A. Yes.

\* \* \* \* \* \*

Q. And you testified that prior to January of 1994 you had no such information regarding Ramiro Chavez–Becerra.

A. No, I did not testify to that.

On redirect, the prosecutor followed up that question with this:

Q. Did you have other intelligence information about Mr. Chavez in January of 1994?

A. Yes.

Q. Knowledge of illegal drug activity, on your part, is not necessarily enough to arrest somebody; is that correct?

A. No, it is not.

 We agree with the State that this testimony is not inadmissible hearsay. It does not speak to any out-of-court statement or an assertion that Chavez–Becerra was a drug dealer or delivered cocaine to the Burtons as charged. WYO.R.EVID. 801(c). We also agree with the State this testimony did not violate WYO.R.EVID. 404. Wyoming follows the "opening the door" rule. *Fortner v. State*, 843 P.2d 1139, 1148 (Wyo.1992). A defendant may "open the door" on cross-examination to evidence of prior criminal misconduct. *Id.* When he raises a line of questions, the prosecutor is entitled to make a permissible inquiry without crossing into prosecutorial overkill. *Id.* In this case, the defense counsel's question of the investigating officer opened the door concerning whether the police had previous information about drug activities by Chavez–Becerra, and the prosecutor permissibly inquired and clarified that the police did have information about drug activities by Chavez–Becerra. Both questions implied prior criminal activities by Chavez–Becerra.

 The State contends that the prosecutor's use of this testimony in her closing argument was not plain error, but was proper argument based on the evidence and in rebuttal to the characterization of Chavez–Becerra as an innocent member of the community by defense counsel in opening statements and in rebuttal to defense counsel's closing argument.

 "The general rule in Wyoming is that a failure to interject a timely objection to an allegedly improper argument is treated as a waiver, unless the misconduct is so flagrant as to constitute plain error and require reversal." *Armstrong v. State*, 826 P.2d 1106, 1115 (Wyo.1992). "The plain error doctrine requires the appellant demonstrate that a clear and unequivocal rule of law has been violated, that he was denied a substantial right and, as a result, has been materially prejudiced." *Id.* Under the plain error standard, the limit on argument by the prosecutor is exceeded if the prosecutor's argument states or implies that the jury should consider factors other than the evidence presented in determining the facts. *Id.* "In review, this court considers the prosecutor's argument in its entirety, not just the sentences and phrases taken out of context." *Id.* During closing arguments, the prosecutor is entitled to reflect upon the evidence and to draw reasonable inferences from that evidence in order to assist the jury in its function. *Id.* at 1116.

In his closing argument, defense counsel argued that the fact that the police had information on his client did not mean that he was not an innocent member of the community. In response to this, the prosecutor argued that the police's familiarity with Chavez–Becerra corroborated the Burtons' testimony that he was their source for cocaine. In our view, the prosecutor's response to the defense's attempt at damage control was not a reasonable inference to be drawn from the evidence. The testimony merely referred to police information about drug activities, but did not specify the type of information or provide any details and was in fact too general a statement to argue that it corroborated informant testimony about two specific crimes. The statement by the prosecutor was a comment on facts not in evidence and improperly exploited the door that the defense had opened. Although improper argument, it is not so flagrant, however, as to overcome the doctrine of waiver. *Vargas–Rocha v. State*, 891 P.2d 763, 772–73 (Wyo. 1995) (Golden, J., concurring).

■ Chavez–Becerra contended that the meetings with the Burtons did not result in cocaine sales, but concerned other innocent matters, and the Burtons were lying in order to have Mrs. Burton's sentence reduced. In its case, the prosecution presented testimony from the Burtons about the drug transactions, testimony from law enforcement officers who monitored the phone calls the Burtons made to set up the meetings and then conducted surveillance of the drug transactions as they took place, tape recordings of the phone calls and the meetings, and presented the cocaine which was purchased. This was not a close case and the improper argument of the prosecutor did not materially prejudice Chavez–Becerra.

Affirmed.