Mario ESPINOZA, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 97–69.

Supreme Court of Wyoming.

Dec. 10, 1998.

Cary R. Alburn III of Alburn & Earnshaw, P.C., Fort Collins, CO, for Appellant. Argument by Mr. Alburn.

\* Chief Justice at time of oral argument; retired

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General, for Appellee. Argument by Mr. Pauling.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,\* JJ.

LEHMAN, Chief Justice.

Appellant Mario Espinoza was convicted of two counts of delivering a controlled substance. He appeals the judgment and sentence, raising issues of prosecutorial misconduct, improper admission of an inculpatory statement, improper admission of prior bad acts evidence, and error in the jury selection process. Finding no reversible error, we affirm.

## ISSUES

Espinoza presented eleven issues for our review, which we decline to list here. The State succinctly summarizes the issues as:

I. Did the district court properly resolve all matters relating to the admission of appellant's statements to his arresting officer?

II. Did the district court properly resolve all matters relating to the admission of evidence touching upon appellant's uncharged misconduct?

III. Did the district court properly resolve appellant's post-trial challenges to the composition of his jury?

Espinoza's claims of prosecutorial misconduct are among the "matters" resolved by the district court with respect to each of the three issues listed above.

## FACTS

In February 1996, an informant working with the Division of Criminal Investigation (DCI) made two controlled buys of marijuana from Espinoza. On May 9, 1996, Espinoza was arrested and charged with two counts of delivering a controlled substance, in violation of W.S. 35–7–1031(a)(ii) (1997). Espinoza was tried in October 1996, and the jury found him guilty on both counts. Espinoza filed a

November 2, 1998.

post-trial motion for new trial on the grounds of prosecutorial misconduct and discriminatory jury selection, which the court denied. He subsequently filed a motion for reconsideration of the motion for a new trial, focusing on the allegations of prosecutorial misconduct, which was also denied. Espinoza timely appeals the judgment and sentence entered on January 29, 1997. Additional facts relevant to specific issues will be set forth in our discussion of those issues.

## DISCUSSION

### Out-of-Court Statements

During trial, Detective Kebin Haller gave an account of Espinoza's arrest, indicating that he advised Espinoza of his *Miranda* rights and allowed him to read the affidavit supporting the charges against him. Detective Haller then testified that he asked Espinoza whether the contents of the affidavit were mostly true or false and that Espinoza responded, "Mostly true." This testimony forms the basis for a number of Espinoza's allegations of error.

Espinoza claims that his out-of-court statement was admitted in error because he was not properly advised of his constitutional rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He frames his argument narrowly, contending that the *Miranda* warnings given by Haller were deficient because Haller did not specifically ask Espinoza if he understood his right to an attorney and if he wanted an attorney present during questioning. Without that specific inquiry, claims Espinoza, there can be no assurance that a defendant has knowingly and intelligently waived that right.

■ *Miranda* requires police to inform an accused during a custodial interrogation that 1) he has the right to remain silent, 2) that anything said may be used against him in court, 3) that he has the right to have an attorney present at questioning, and 4) that, if he cannot afford to retain an attorney, one will be appointed for him. *Miranda v. Arizona,* 384 U.S. at 467–73, 86 S.Ct. at 1624–27; *Kolb v. State,* 930 P.2d 1238, 1240 (Wyo. 1996); WAYNE R. LaFAVE & JEROLD H. ISRA-

EL, CRIMINAL PROCEDURE § 6.8(a) (1984). Whether a defendant has "knowingly and intelligently" waived his rights depends in part upon his ability to understand and act upon the warnings which *Miranda* requires. *Kolb,* 930 P.2d at 1244, LaFAVE & ISRAEL, *supra,* § 6.9(b).

■ Haller testified that he administered the required warnings by reading from his "*Miranda* card." He asked Espinoza if he understood his rights, and Espinoza replied that he did. The record contains no indication that Espinoza lacked the capacity to understand the warnings. Moreover, shortly after responding to Detective Haller's question regarding the accuracy of the affidavit, Espinoza invoked his right to counsel, indicating a full and intelligent awareness of his *Miranda* rights. *See Kolb,* 930 P.2d at 1244. Haller complied with the mandates of *Miranda,* and Espinoza's claim that follow-up questions were necessary is without merit. The district court did not err when it denied Espinoza's motion to strike his inculpatory statement.

Espinoza next alleges error because the argument concerning the admissibility of his out-of-court statement should not have been heard in front of the jury. Hearings on the admissibility of confessions must be conducted outside the hearing of the jury, and the court should conduct other proceedings, to the extent practicable, so as to prevent the jury from being exposed to inadmissible evidence. W.R.E. 103(c), 104(c). However, the manner in which Espinoza challenged Detective Haller's testimony prevented the trial court from giving full effect to the rules of evidence.

■ Espinoza initially halted Haller's testimony during direct examination by objecting to the foundation concerning the *Miranda* warnings Haller gave to Espinoza. Haller then testified to the specifics of the warnings he gave, without objection, and related Espinoza's statement, also without objection. Espinoza did not request a hearing with respect to the admissibility of his statement or seek to question Detective Haller outside the jury's presence. Instead, during cross-examination he further questioned Hal-

ler on the particulars of the *Miranda* warnings, and then moved to strike the evidence of his statement:

> [Espinoza's Attorney]: Your Honor, at this time, we move to strike and ask the jury be instructed that any statement of an inculpatory nature that Mario Espinoza may have made after this so called advisement of rights is inadmissable on the grounds that this officer failed to tell him his Miranda rights * * *.

Espinoza then proceeded to argue his position in front of the jury, without seeking so much as a bench conference to discuss the matter out of earshot of the jury. Under these circumstances, the court did not err. In any event, as discussed above, Espinoza was adequately apprised of his *Miranda* rights, and his motion to strike was properly denied. Consequently, the jury was not exposed to inadmissible evidence, and Espinoza was not prejudiced.

We turn now to Espinoza's claim of prosecutorial misconduct, which he first raised in his motion for new trial. The decision to grant or deny a motion for new trial is within the sound discretion of the trial court, and we defer to the ruling of the trial court unless the appellant demonstrates an abuse of discretion. *Relish v. State,* 860 P.2d 455, 458 (Wyo.1993). The same standard is applied to the decision of a court in dealing with a breach of any discovery order. *Lindsey v. State,* 725 P.2d 649, 655 (Wyo.1986). An abuse of discretion has been described as a ruling which exceeds the bounds of reason under the circumstances. *Ross v. State,* 930 P.2d 965, 968 (Wyo.1996). In determining whether there has been an abuse of discretion, the ultimate question is whether the court could reasonably conclude as it did. *Rubio v. State,* 939 P.2d 238, 241 (Wyo.1997).

Espinoza contends that the prosecution did not honor his reasonable and timely discovery request for any pretrial statements, and affirmatively misrepresented the reasons therefor to the district court. He argues that this misconduct resulted in unfair surprise and denied him the right to a fair trial.

Although the State filed a notice that it had fully complied with Espinoza's discovery requests, the prosecution failed to disclose Espinoza's "mostly true" statement to Detective Haller prior to trial. In the State's traverse to Espinoza's motion for new trial, the prosecutor reiterated that the State had fully complied with discovery obligations and related that Espinoza's statement was shared with the defense during the preliminary hearing. As part of discovery, the prosecutor had provided Espinoza with two audio tapes of the preliminary hearing, one of which was blank, along with an accompanying transcript page stating that tape two was inaudible. The recorded portion contained no discussion of Espinoza's pre-trial statement. In the hearing on the new trial motion, the prosecutor represented to the court that the second tape of the preliminary hearing was not transcribable and the county court had had problems with their tape machine not working, but that she spoke with Detective Haller and he remembered testifying about Espinoza's statement during the preliminary hearing. It was later discovered that the original tapes recording the entire preliminary hearing were in the possession of the district court, both tapes were clearly audible, and neither revealed any discussion or testimony regarding Espinoza's statement. In the State's traverse to Espinoza's motion for reconsideration, the prosecutor stated that she assumed the original tape was inaudible without listening to it, but the problem apparently arose in duplication. The prosecutor acknowledged that, after listening to the tapes in their entirety, it was clear Detective Haller did not testify about Espinoza's statement at the preliminary hearing, but maintained that she had relied on her own and Detective Haller's memories of the hearing in good faith. The State's position is that the failure to provide discovery was unintentional and harmless in light of the overwhelming evidence against Espinoza.

The district court conducted a hearing on Espinoza's motion for a new trial. The parties explained their respective positions and answered questions from the court. The court expressed concern about the potential surprise to Espinoza because he was not provided with the "mostly true" statement in the discovery process. However, the court made a factual finding that the State's failure

to disclose the statement was not intentional on the State's part. The court also determined that the record contained sufficient evidence for the jury to find as they did regardless of that testimony. The trial court was in the best position to make those determinations, *see Warner v. State*, 897 P.2d 472, 474 (Wyo.1995), and we conclude that the district court properly exercised its discretion when it denied the motion for new trial based on prosecutorial misconduct and discovery violations.

### *Evidence of Prior Misconduct*

Prior to trial, Espinoza filed a motion in limine seeking to prohibit the State from presenting allegations of uncharged misconduct by Espinoza. The court granted the motion in limine, stating:

> At trial, the State will refrain from commenting on any uncharged conduct that the Defendant is alleged to have committed unless the State gives proper notice as required by the Wyoming Supreme Court.

During the State's redirect examination of Detective Haller, the prosecutor inquired into a confrontation between Haller and Espinoza which had taken place in January 1996, a few weeks before the first controlled buy from Espinoza. When asked why he confronted Espinoza, Haller responded that he had received information from various sources in Rawlins that Espinoza had a large quantity of marijuana at his house. Espinoza immediately requested a meeting in chambers and moved for a mistrial for violation of the court's order and the notice requirements for prior bad act testimony. The court agreed with the State that Espinoza had opened the door to the testimony and denied the motion. Espinoza raised the issue again in his motion for new trial, which the court also denied.

On appeal, Espinoza challenges the court's denial of his motions. The court's ruling on a motion for mistrial, as with a new trial motion, is reviewed for an abuse of discretion. *Ross v. State*, 930 P.2d at 968.

In chambers, the State contended that Detective Haller's testimony did not violate W.R.E. 404(b) because Espinoza opened the door to that testimony. "A defendant may 'open the door' on cross-examination to evidence of prior criminal misconduct." *Chavez–Becerra v. State*, 924 P.2d 63, 69 (Wyo. 1996); *see also Reinholt v. State*, 601 P.2d 1311, 1317 (Wyo.1979). When the defendant initiates a line of questioning, the prosecutor is entitled to make a permissible inquiry without crossing into prosecutorial overkill. *Chavez–Becerra*, 924 P.2d at 69. Espinoza's theory of defense was that Haller bore a grudge against him which motivated unprofessional conduct in his handling of the case in the form of harassment and entrapment of Espinoza. During his cross-examination of Haller, the following exchange occurred:

> Q [Espinoza's attorney]: Yeah. Now before all of this came around, you went and visited with Mario at his place of work in January of '96, didn't you?
>
> A [Detective Haller]: It was around that date, yes.
>
> Q: Yeah. And basically told him, clean up your act or I'm going to come get you, right?
>
> A: I had received some information that led me to Mario. I went and had a conversation with him and told him, get out of it now or you and I will meet again, yes.

During redirect, the prosecution asked:

> Q: Finally, sir, Counsel for the Defendant asked you if you had confronted Mario ·in approximately January of '96.
>
> Do you recall that?
>
> A [Detective Haller]: Yes, I do.
>
> Q: What reason did you confront him?
>
> A: I had received information again from various sources in Rawlins. One person wished to remain anonymous. They advised me that Mario Espinoza had a large quantity of marijuana at his house.

The prosecutor permissibly inquired and clarified that Haller's meeting with and comments to Espinoza were made during the course of his duties as a law enforcement officer, and not motivated by personal feelings. We agree with the district court that the defense opened the door to that testimony. *Reinholt*, 601 P.2d at 1317; *Fortner v. State*, 843 P.2d 1139, 1147–49 (Wyo.1992). Further, the prosecutor did not exploit De-

tective Haller's response, and ended the redirect examination at that point. The trial court did not abuse its discretion when it denied Espinoza's motion for mistrial based on the prior bad act testimony, or when it denied Espinoza's new trial motion grounded in the same complaint.

### Jury Selection

The venire from which Espinoza's jury was drawn included two individuals with Hispanic surnames, both of whom were peremptorily challenged by the State. Espinoza claims the composition of the venire violated the "fair cross section" requirement of the Sixth Amendment to the United States Constitution. He also asserts an equal protection violation, pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), based on the State's use of its peremptory challenges. These matters were raised for the first time in Espinoza's post-trial motion for new trial.

To establish a prima facie "fair cross section" violation, Espinoza was required to show: 1) that the group allegedly excluded from the venire is a distinctive group in the community; 2) that the group's representation in venires is not fair and reasonable in relation to its numbers in the community; and 3) that the group's underrepresentation in venires is due to systematic exclusion attributable to the process by which venire members are selected. *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

█ Espinoza's showing in this regard is inadequate. He offered no proof whatsoever of the process by which venire members are selected in Carbon County and, consequently, did not demonstrate that Carbon County's selection procedures resulted in Hispanics being underrepresented in venires over time. As a result, Espinoza fails to establish a prima facie case, and we will not further consider his challenge to the composition of the venire.

In *Batson v. Kentucky*, the United States Supreme Court held that, although a defendant has no right to a petit jury composed in whole or in part of persons of his own race, the State may not exercise its peremptory challenges to purposefully exclude members of the defendant's race solely because of race. 476 U.S. at 85–86, 106 S.Ct. at 1717.

> [A] defendant can establish a prima facie case of purposeful discrimination in selection of the petit jury [by showing first] that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact * * * that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Bueno–Hernandez v. State*, 724 P.2d 1132, 1134 (Wyo.1986), *cert. denied*, 480 U.S. 907, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987) (quoting *Batson v. Kentucky*, 476 U.S. at 96, 106 S.Ct. at 1723 (citations omitted)). Once the defendant makes a prima facie showing, the State has the burden of coming forward with a neutral explanation for challenging the jurors. *Id.* The prosecutor's explanation need not rise to the level justifying a challenge for cause, but requires more than a mere denial of discriminatory motive or a statement that the challenge was based on the assumption that members of the defendant's race would be partial to the defendant because of their shared race. *Id.*

█ Here, the prosecutor offered a neutral explanation, unrelated to ethnicity, for challenging the venire members. The transcript of the voir dire proceedings substantiates the prosecutor's assertion that the two jury members in question knew Espinoza, their children were friends with him, and Espinoza had spent time at their homes. Therefore, even assuming that Espinoza established a prima facie case of purposeful discrimination, the prosecutor's explanation was sufficient to refute Espinoza's claim. *See Bueno–Hernandez*, 724 P.2d at 1135; *Evans v. State*, 653 P.2d 308, 310 (Wyo.1982).

For the reasons stated above, the court did not abuse its discretion when it denied Espinoza's motion for a new trial based on discriminatory jury selection.

## CONCLUSION

The judgment and sentence of the district court is affirmed in all respects.